[No. B014705. Second Dist., Div. One. Apr. 1, 1986.]

BURTRAM JOHNSON, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF SANTA MONICA-MALIBU
UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

[redacted]

**COUNSEL**

Cheryl E. Keith for Plaintiff and Appellant.

O'Melveny & Myers, Richard N. Fisher and Polly L. Brophy for Defendant and Respondent.

**OPINION**

**ARANDA, J.*—**

### STATEMENT OF FACTS

Appellant's minor child was enrolled at Santa Monica High School for the Spring 1984 semester in an elective advanced level French class taught by Ms. Sharon Sawaya. As of the end of the second sixth week grading period, the student's grade in the class was a "D." Appellant and his child determined that it would be in her best interest to withdraw from attendance in this course.

The child brought a withdrawal petition home for appellant to sign. Appellant signed the petition. The pupil returned to school with the signed document. She submitted the petition to her teacher for processing in accordance with the rules of respondent school district. The child stated that Ms. Sawaya expressed a reluctance to sign the petition, took the petition from her and explained that she wanted to "think about it" first. According to the teacher, the pupil informed her that she was considering withdrawal but did not at any time submit a withdrawal petition to be signed.

Ms. Sawaya testified that she encouraged the minor to continue in the class and offered to help her during lunch hours and to allow her to make

---

*Assigned by the Chairperson of the Judicial Council.

up some missed examinations. It is undisputed that the withdrawal petition was never submitted to the textbook counselor, the minor's individual counselor or the school administration. It is further undisputed that the child continued to attend the class through the entire semester (although with frequent absences), took and failed the final examination and was ultimately assigned a grade of "D" for the class based upon her performance over the entire semester, which included 20 absences (4 unexcused), poor test results, failure to seek special individual tutoring offered by Ms. Sawaya, failure to make up several missed tests and the "F" on the final examination.

When appellant learned that his child had earned a "D" in her French class, he called the teacher to ask that the grade be changed to "W," i.e., withdrawal. According to appellant, Ms. Sawaya did not object to his proposal. According to Ms. Sawaya, she told appellant that a grade change was impossible since the child had not withdrawn from the class, but had completed it. On September 19, 1984, appellant met with Ms. Sawaya, the principal and the vice principal. His request for a grade change was denied on the ground that the child had not withdrawn from the class, but had completed it.

Appellant then wrote to the superintendent demanding that, under Education Code section 49070, his child's final grade in Ms. Sawaya's class be changed from "D" to a "W." The superintendent, Dr. George L. Caldwell, appointed Dr. Leo Martucci to investigate the circumstances pursuant to Education Code section 49070.[1]

[1]Section 49070 reads as follows: "Following an inspection and review of a pupil's records, the parent of a pupil or former pupil of a school district may challenge the content of any pupil record.

"(a) The parent of a pupil may file a written request with the superintendent of the district to correct or remove any information recorded in the written records concerning his child which he alleges to be: (1) inaccurate, (2) an unsubstantiated personal conclusion or inference, (3) a conclusion or inference outside of the observer's area of competence, or (4) not based on the personal observation of a named person with the time and place of the observation noted.

"(b) Within 30 days of receipt of such request, the superintendent or his designee shall meet with the parent and the certificated employee who recorded the information in question, if any, and if such employee is presently employed by the school district. The superintendent shall then sustain or deny the allegations.

"If the superintendent sustains any or all of the allegations, he shall order the correction or the removal and destruction of the information. However, in accordance with Section 49066, the superintendent shall not order a pupil's grade to be changed unless the teacher who determined such grade is, to the extent practicable, given an opportunity to state orally, in writing, or both, the reasons for which such grade was given and is, to the extent practicable, included in all discussions relating to the changing of such grade.

"If the superintendent denies any or all of the allegations and refuses to order the correction or the removal of information, the parent may, within 30 days of the refusal, appeal

Acting on erroneous advice from county counsel (advice which was later corrected) to the effect that a grade change could be made as a "change of record" under Education Code section 49070, rather than as a "change of grade" under the more restrictive standards of Education Code section 49066, Dr. Leo Martucci recommended the change of grade from "D" to "W," withdrawal. Superintendent Caldwell adopted Dr. Martucci's recommendation and on October 29, 1984, ordered the change.

When Ms. Sawaya learned that the appellant's challenge to his child's student records had been sustained and the student records had been ordered corrected to reflect the superintendent's determination, she became dissatisfied and contacted the Santa Monica-Malibu Teacher's Association. The teacher requested that the Santa Monica-Malibu Teacher's Association represent her in proceedings before respondent concerning appellant's child's student records. Although virtually all information concerning any student's school records is deemed confidential and any disclosure without the consent of the parent is forbidden (see Ed. Code, § 49076), petitions containing signatures of over 200 hundred faculty and staff at schools throughout the school district were subsequently directed to the respondent. These petitions were dated November 26, 1984, and concerned the status of appellant's child in the course and appellant's challenge to her student records. Approximately 109 signatures on these petitions were from faculty and staff at Santa Monica High School, the school attended by appellant's child. Other petitions dated December 13, 1984, and signed by approximately 99 of the child's fellow students at the school, were also directed to respondent. None of these persons were entitled to any information regarding the student

---

the decision in writing to the governing board of the school district.

"(c) Within 30 days of receipt of such an appeal, the governing board shall, in closed session with the parent and the certificated employee who recorded the information in question, if any, and if such employee is presently employed by the school district, determine whether or not to sustain or deny the allegations.

"If the governing board sustains any or all of the allegations, it shall order the superintendent to immediately correct or remove and destroy the information from the written records of the pupil. However, in accordance with Section 49066, the governing board shall not order a pupil's grade to be changed unless the teacher who determined such grade is, to the extent practicable, given an opportunity to state orally, in writing, or both, the reasons for which such grade was given and is, to the extent practicable, included in all discussions relating to the changing of such grade.

"The decision of the governing board shall be final.

"Records of these administrative proceedings shall be maintained in a confidential manner and shall be destroyed one year after the decision of the governing board, unless the parent initiates legal proceedings relative to the disputed information within the prescribed period.

"(d) If the final decision of the governing board is unfavorable to the parent, or if the parent accepts an unfavorable decision by the district superintendent, the parent shall have the right to submit a written statement of his objections to the information. This statement shall become a part of the pupil's school record until such time as the information objected to is corrected or removed."

record of appellant's child and the widespread dissemination of such information was clearly not in her best interests.

On November 19, 1984, an appearance was made before respondent, without notice to appellant, by seven individuals, including Ms. Sawaya and the president of the teacher's association. These individuals expressed their objections to the decision of the superintendent. The teacher submitted to respondent copies of the attendance and grade records of appellant's child. On December 17, 1984, respondent convened a hearing, which respondent declared to be a "de novo" consideration of whether or not appellant's child's grade should be changed. At the hearing, which was attended only by witnesses and board members, the board heard testimony and accepted documentary evidence from all the involved parties, including the appellant and his child, Superintendent Caldwell, Ms. Sawaya, Dr. Martucci, and the school principal and vice principal. The superintendent testified that due to a misapprehension of the law, he had ordered the grade change without considering or applying the statutory criteria of Education Code section 49066.[2]

Appellant, his daughter, and Ms. Sawaya testified that appellant's daughter had completed the class and taken the final examination.

Based on the evidence offered at the hearing, the board found that the grade change was erroneous, and further found that none of the statutory criteria for entry of a grade change applied in this case. Therefore, on January 14, 1985, the board concluded that the original "D" grade should not be altered.

After the board issued its decision, appellant filed a motion for judgment on peremptory writ in the Los Angeles Superior Court on February 25, 1985. After hearing argument, the trial court admitted the administrative record into evidence, carefully reviewed the entire record, and concluded that the board's determination was supported by substantial evidence. Appellant's motion for reconsideration was heard and denied on April 26, 1985. This appeal followed.

---

[2]Education Code section 49066 states, in pertinent part: "(a) When grades are given for any course of instruction taught in a school district, the grade given to each pupil shall be the grade determined by the teacher of the course and the determination of the pupil's grade by the teacher, in the absence of clerical or mechanical mistake, fraud, bad faith, or incompetency, shall be final.

"(b) the governing board of the school district and the superintendent of such district shall not order a pupil's grade to be changed unless the teacher who determined such grade is, to the extent practicable, given an opportunity to state orally, in writing, or both, the reasons for which such grade was given and is, to the extent practicable, included in all discussions relating to the changing of such grade."

ISSUES

1. Is a change from a "D" to a "W" a change of record pursuant to Education Code section 49070 or a change of grade pursuant to Education Code section 49066? Was the superintendent's action pursuant to Education Code section 49070 proper?

2. Is the board authorized and empowered with administrative jurisdiction to rescind or revoke the superintendent's order?

DISCUSSION

I

Is the change from "D" to "W" a change of record or a change of grade?

After carefully reviewing this legislation and researching its background, the court notes that this is a case of first impression. It is a settled rule of statutory construction that a special statute dealing expressly with a particular subject controls and takes priority over a general statute. (*Lacy* v. *Richmond Unified Sch. Dist.* (1975) 13 Cal.3d 469, 472 [119 Cal.Rptr. 1, 530 P.2d 1377]; *Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726, 736 [108 P.2d 443].)

Clearly, grades are mandatory records which must be kept. The courts have directed that in construing a statute, "consideration should be given to the consequences that will flow from a particular interpretation. If two constructions are possible, that which leads to the more reasonable result should be adopted." (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 332 [139 Cal.Rptr. 378]; accord, *Anderson Union High Sch. Dist.* v. *Schreder* (1976) 56 Cal.App.3d 453, 460 [128 Cal.Rptr. 529].)

We cannot interpret each individual section of the Education Code without taking the balance of the code into perspective. Grades are records. Nevertheless, the legislature intended, by the passage of two distinct statutes, to differentiate a change of records when it came to grades from records of a non-grade nature which must also mandatorily be kept by school officials. Education Code section 49066 which pertains to change of grades is far more restrictive in that it severely limits the manner in which a grade may be changed and includes in that process the teacher's input at all stages of the proceedings. We therefore hold that changing a grade from that given by the teacher at the conclusion of the semester and changing it to anything else must be governed by Education Code section 49066.

We further note the facts in this case clearly indicate that the pupil did not withdraw from the class as contended by appellant. The child continued to attend class, albeit with numerous absences, after the purported withdrawal and even went so far as to take the final examination. This conduct is inconsistent with appellant's claim that his child withdrew from the class and gives credence to the record presented that the child completed the class.

We therefore conclude that the utilization of Education Code section 49070, the change of records statute, by the superintendent was error. The correct law which must be applied is Education Code section 49066.

## II.

Did the Board of Education have legal authority to review the superintendent's decision?

Education Code section 35160 provides: "On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."

Respondent contends that Education Code section 35160 expressly supersedes *Pasadena School Dist.* v. *Pasadena* (1913) 166 Cal. 7 [134 P. 985] and *Grigsby* v. *King* (1927) 202 Cal. 299 [260 P. 789] in which the California Supreme Court held school districts to have limited jurisdiction. We conclude that, in view of the clear language expressed by the state legislature in Education Code section 35160, respondent's argument is compelling.

When the Legislature has made clear its intent that a school district may initiate and carry on any program or activity, or otherwise act in a manner not in conflict or inconsistent with the law and not in conflict with the purposes for which a school district is established, we conclude that such categorical leeway cannot be restricted by the courts. The Board of Education, therefore, is empowered with the inherent right and express administrative jurisdiction to create investigative boards or bodies, hold hearings, address grievances and issue and enforce its holdings in so far as they are not in conflict with or inconsistent with any law and which are not in conflict with the purposes for which the school districts are established. The Supreme Court acknowledged this change in *Hartzell* v. *Connell* (1984) 35 Cal.3d 899 [201 Cal.Rptr. 601, 679 P.2d 35], where at page 915 it noted: "Prior to the effective date of section 35160, local school districts possessed

little, if any, power to act without express legislative or administrative authorization. [Citation.] Section 35160 provides local districts with more flexibility.'' The court goes on to note that it was the view of the legislative counsel that the Legislature would not have to grant specific authority for a school board to carry out a particular activity but could authorize school boards to carry out any activity if it was related to school purposes and not prohibited by law.

We conclude that respondent Board of Education was empowered with administrative jurisdiction to review, reconsider, reaffirm, rescind or revoke any order of its superintendent which it found not in conformance with the law.

We further conclude that the Board of Education did not abuse its discretion by rescinding the order of the superintendent.

The trial court properly concluded on the basis of the administrative record that the Board's decision was supported by substantial evidence, there being no evidence at all that the grade assigned was due to fraud, bad faith, incompetency, or mistake, or anything more than simply the result of Ms. Sawaya's considered judgment of the pupil's performance over the course of the entire semester.

### DISPOSITION

The trial court's findings are supported by the evidence. The judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.