[No. A036252. First Dist., Div. Two. Jan. 28, 1988.]

EUREKA TEACHERS ASSOCIATION et al., Plaintiffs and Appellants, v.
BOARD OF EDUCATION OF EUREKA CITY SCHOOLS, Defendant and Respondent.

COUNSEL

Victor Schaub for Plaintiffs and Appellants.

Richard A. Smith, Geri Anne Johnson and Harland & Gromala for Defendant and Respondent.

OPINION

BENSON, J.—This is an appeal from a judgment denying appellants' petition for issuance of a writ of mandate against respondent, Board of Education of the Eureka City Schools (Board).[1] The trial court found that the conduct of the Board in changing the grade of the pupil was a proper act and not prohihited by Education Code sections 49066 and 49067.[2] Because we find error, we reverse the trial court's judgment of denial and remand the cause with instructions to the trial court.

*Procedural Background/Statement of Facts*[3]

Appellant Albert L. Braud (Braud) was a member of appellant Eureka Teachers Association and employed by the Board as a teacher at Eureka High School for the 1983-1984 school year. By special arrangement entered into among Patricia Bacchetti (Tricia), her parents, and the superintendent of schools during the summer of 1983, Tricia was enrolled in Winship Junior High School for the first quarter of the 1983-1984 school year and

---

[1] Although appellants originally filed a petition for peremptory writ of mandate and complaint for declaratory relief, it appears from the briefs filed with this court that they are appealing only that portion of the judgment denying the writ.

[2] Unless otherwise stated, all further references are to the Education Code.

[3] In order to provide a complete picture of this case, the facts stated herein are based upon the reporter's transcript and exhibits admitted at the May 27, 1986, trial. The facts set forth in the administrative record of the March 5 and 12, 1984, Board hearings are significantly fewer.

transferred to Eureka High School for the second quarter of that year. Tricia and her parents were assured by the superintendent that if she performed satisfactorily both at Winship and Eureka, she would pass and receive her credit. These arrangements were made because the Winship School administrators had failed to notify Tricia's parents, as required by section 49067, that she was in danger of failing the second semester of her eighth grade classes during the spring of 1983.[4]

Prior to Tricia's arrival at Eureka High School, there were a series of "professional disagreements" between Braud and the administration of Eureka High School. These disagreements concerned enrollment criteria, room assignment, assignment of transferring students, and course content, particularly the offering of the general science basic course.

At the beginning of the second quarter of the 1983-1984 school year, assistant principal of Eureka High School Jerry Carter (Carter) assigned Tricia and two other transferring students to Braud's general science basic class. When Tricia presented herself to Braud for enrollment in his course, he refused to enroll her, on the basis that she did not meet the "criteria," and refused to sign the registration slip. Tricia returned with Carter, who told Braud that Tricia was to be enrolled in his class. At that time, Braud informed Tricia that she would not be able to receive a passing grade for the first semester because she was absent from his class for the first quarter, the eighth grade work did not qualify for credit, and the courses were incompatible. Tricia repeatedly advised Braud that she had been told she would be able to pass the course.

On December 15, 1983, Braud sent a written notice informing Tricia's parents that she was in danger of failing his science course because she was not enrolled in his class for the first quarter. On January 10, 1984, Carter met with the instructors of the transfer students, including Braud, to discuss uniformity regarding grade assignments. Carter explained the circumstances surrounding the transfer of the pupils midsemester and that their first quarter grades should be considered in determining the semester grade. At the end of the semester, Braud averaged Tricia's second quarter points (456 out of 581, a grade of C+) with her first quarter points (which he assigned as 0 out of 399, a grade of F), and gave her a semester grade of F.[5] Braud refused to consider Tricia's first quarter grade from Winship (which was a C+).

---

[4] Section 49067 requires that school administrators provide written notice to the parents of students who are in danger of failing one or more courses.

[5] Appellants incorrectly and inconsistently state the points and grade in their petition and briefs. The points and grades stated here are based upon Braud's grading records.

In February 1984, the Board's superintendent and the Eureka High School principal met with Braud to discuss changing Tricia's grade. Braud refused to change the grade. The matter was brought before the Board on March 5, 1984, for consideration of changing the grade, under section 49066.[6] The closed session was attended by Braud, Tricia, her parents, the superintendent, and other administrators. Braud participated in all discussions concerning the grade change.[7] The meeting was continued to March 12, 1984, to enable the Board to obtain a legal opinion regarding the situation. The Board unanimously voted to give Tricia credit for her first quarter work and to change her semester science grade from an F to a C+. The proceedings were tape-recorded and transcribed.

Appellants filed a petition for writ of mandate and complaint for declaratory relief on March 21, 1985, to compel the Board to change the C+ back to an F. Appellants allege that the Board abused its discretion by changing the grade absent a showing of bad faith.[8] ▮ ▮ ▮ ▮ An amended petition and complaint were filed October 9, 1985, joining Tricia and her parents as respondents.[9] Appellants did not specify whether the writ was sought under California Code of Civil Procedure section 1085 or 1094.5.

Trial was held on May 27, 1986. Witnesses testified and evidence was taken. The transcripts of the March 5 and 12, 1984, closed sessions were admitted into evidence by minute order dated May 27, 1986, following the trial.[10] The trial court entered its judgment on July 9, 1986, denying the writ and declaring that the Board's conduct in changing Tricia's grade was a proper act.

---

[6] Section 49066, subdivision (a), provides that: "When grades are given for any course of instruction taught in a school district, the grade given to each pupil shall be the grade determined by the teacher of the course and the determination of the pupil's grade by the teacher, in the absence of clerical or mechanical mistake, fraud, bad faith, or incompetency, shall be final."

[7] Section 49066, subdivision (b), provides that: "The governing board of the school district and the superintendent of such district shall not order a pupil's grade to be changed unless the teacher who determined such grade is . . . given an opportunity to state . . . the reasons for which such grade was given and is . . . included in all discussions relating to the changing of such grade."

[8] In their petition, appellants allege that the Board's action was a prejudicial abuse of discretion, in violation of section 49066, which provides that the teacher's grade is final, absent clerical or mechanical mistake, fraud, bad faith, or incompetency. However, at trial, appellants and the Board agreed that the sole ground for the Board changing the grade is bad faith.

[9] Appellants incorrectly joined Tricia and her parents as "respondents." They should have been joined as "real parties in interest" since the writ of mandate could only be enforceable against the Board.

[10] The transcripts represent only a partial administrative record. References are made in the transcripts to certain Board policies, a "written legal opinion" distributed, "materials" previously distributed, and a "memorandum"; however, none of these documents were included in the record received by the trial court.

Appellants timely appealed from the judgment. On September 11, 1987, this court requested that the parties file letter briefs addressing the issue of whether this action should have been filed under the administrative mandate provisions of Code of Civil Procedure section 1094.5.[11]

*Contentions on Appeal*

In their briefs to this court, both parties maintain that the administrative mandate provisions of Code of Civil Procedure section 1094.5 are inapplicable to this action. They contend that the basis for this appeal is whether or not there was substantial evidence to support the trial court's finding of bad faith. At oral argument counsel for the Board conceded section 1094.5 might apply to this proceeding.

*Discussion*

■ In reviewing a denial of mandamus, this court must consider the proper roles of the agency and the reviewing trial court with respect to the decision made by the agency. We then must ascertain whether the proper standard of review was applied by the trial court in determining whether the Board's actions should be sustained. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12].)

I. *Action Proper Under Code of Civil Procedure Section 1094.5*

■ The court disagrees with the parties' arguments that relief under Code of Civil Procedure section 1094.5 is inapplicable here. The administrative mandate procedure of section 1094.5 is to be used in all writ cases challenging the validity of any final administrative order or decision made as a result of a proceeding in which by law (1) a hearing is required, (2) evidence is required to be taken, and (3) discretion in the determination of facts is vested in the inferior board. (Cal. Administrative Mandamus (Cont.Ed.Bar 1967) § 2.1, pp. 9-10.) ■ Although no hearing nor taking of evidence is specifically required under section 49066, the parties fail to consider section 49070, and to apply the facts and events of this case accordingly.[12]

---

[11] Tricia and her parents are not parties to the appeal. Therefore, the Eureka Teachers Association and Braud are "appellants" and the Board is the "respondent" in this appeal.

[12] Section 49070 provides: "Following an inspection and review of a pupil's records, the parent of a pupil . . . of a school district may challenge the content of any pupil record.

"(a) The parent . . $. may file a written request with the superintendent of the district to correct or remove any information recorded in the written records concerning his child which he alleges to be: (1) inaccurate, (2) an unsubstantiated personal conclusion or infer-

Section 49070 delineates hearing procedures for a parent to challenge the content of a pupil's record. The statute specifically cites section 49066, prohibiting the superintendent or board from ordering a pupil's grade changed unless the teacher who determined such grade is provided an opportunity to state the reasons the grade was given and is included in all discussions relating to the changing of such grade. The board is required to conduct a closed session with the parent and teacher present, if a grade change is involved. The statute further provides that the board's decision is final. Finally, the board is required to maintain the records of "these administrative proceedings," and to destroy them after one year unless the parent initiates legal proceedings.

 It is not necessary that a *specific* provision for a hearing and taking of evidence be stated for Code of Civil Procedure section 1094.5 to apply. For example, in *Chavez* v. *Civil Service Com.* (1978) 86 Cal.App.3d 324 [150 Cal.Rptr. 197], the trial court denied respondent's authority to conduct a hearing because of a probationary employee's limited right to appeal his release. The appellate court reversed. Although the rules did not specifically provide for a hearing and taking of evidence, the court found that a hearing requirement is to be *implied,* absent a contrary intent expressed in the provisions creating the right of appeal.

---

ence, (3) a conclusion or inference outside of the observer's area of competence, or (4) not based on the personal observation of a named person with the time and place of the observation noted.

"(b) Within 30 days of receipt of such request, the superintendent . . . shall meet with the parent and . . . employee who recorded the information in question. . . . [¶] If the superintendent sustains any or all of the allegations, he shall order the correction or the removal . . . of the information. *However, in accordance with Section 49066,* the superintendent shall not order a pupil's grade to be changed unless the teacher who determined such grade is, to the extent practicable, given an opportunity to state orally, in writing, or both, the reasons for which such grade was given and is, to the extent practicable, included in all discussions relating to the changing of such grade. [¶] If the superintendent denies any or all of the allegations and refuses to order the correction or the removal of the information, the parent may, within 30 days of the refusal, appeal the decision in writing to the governing board of the school district.

"(c) Within 30 days of receipt of such an appeal, the governing board shall, in closed session with the parent and . . . employee who recorded the information in question . . . determine whether or not to sustain or deny the allegations. [¶] If the governing board sustains any or all of the allegations, it shall order the superintendent to immediately correct or remove and destroy the information from the written records of the pupil. *However, in accordance with Section 49066,* the governing board shall not order a pupil's grade to be changed unless the teacher who determined such grade is, to the extent practicable, given an opportunity to state orally, in writing, or both, the reasons for which such grade was given and is, to the extent practicable, included in all discussions relating to the changing of such grade. [¶] The decision of the governing board shall be final. [¶] Records of these administrative proceedings shall be maintained in a confidential manner and shall be destroyed one year after the decision of the governing board, unless the parent initiates legal proceedings relative to the disputed information. . . ." (Italics added.)

In this case, section 49070 provides for an appeal to the Board from an adverse decision made by the superintendent. The applicability of the hearing requirements in section 49070 with respect to changing a grade under 49066 was addressed in *Johnson v. Board of Education* (1986) 179 Cal.App.3d 593 [224 Cal.Rptr. 885]. There, a parent challenged the assigning of a "D" grade to his child, and the superintendent changed the grade without considering the statutory criteria of section 49066. The teacher challenged the superintendent's actions on the basis that she was not given an opportunity to provide her reasons for assigning the grade nor was she included in discussions relating to the changing of such grade. The Board then convened a "de novo" hearing, in accordance with section 49070, and took evidence concerning the grade change. The Board found that none of the statutory criteria under section 49066, authorizing a grade change, applied and the "D" was reentered.

The trial court upheld the Board's decision. The appellate court affirmed, stating that each individual section of the Education Code could not be interpreted without taking the balance of the code into perspective, and that "grades are records." It further stated that by passage of two distinct statutes, sections 49066 and 49070, the Legislature intended to differentiate a change of records when it came to grades from records of a nongrade nature. Thus, section 49066 operates as a limitation to the superintendent's and board's authority to change a pupil's record under section 49070 when the change affects a grade, by imposing statutory criteria and the teacher's participation and input. The trial court found all of the requirements of Code of Civil Procedure section 1094.5, a hearing be required by law, evidence taken, and authority vested in the Board to take action, were present.

The trial court in *Johnson* based its decision upon a review of the administrative record. The appellate court observed that "[t]he trial court properly concluded on the basis of the administrative record that the Board's decision was supported by substantial evidence, there being no evidence at all that the grade assigned was due to fraud, bad faith, incompetency, or mistake, or anything more than simply the result of [the teacher's] considered judgment of the pupil's performance over the course of the entire semester." (*Johnson v. Board of Education, supra,* 179 Cal.App.3d at p. 601.)

These same factors are present in the instant case. Counsel acknowledged to the trial court that a hearing had been held "in accordance with the Education Code" before the grade was changed, even though their subsequent briefs on appeal deny that any hearing or taking of evidence occurred before trial. The events that occurred on March 5 and 12, 1984, were "hearings" within the meaning of section 49070. The meetings were closed

sessions, authorized and conducted by the Board, attended by the people designated under section 49070, and Braud was given an opportunity to present evidence in support of the grade he assigned. The sessions were tape-recorded and transcribed, and documentation was offered at the sessions.[13] The Board's decision to change a grade is final under section 49070. Therefore, the proper procedure before the trial court was a petition for administrative mandate under Code of Civil Procedure section 1094.5, rather than a petition for traditional mandate under Code of Civil Procedure section 1085.

Based upon our discussion above, we conclude that the parties argued and submitted the wrong writ action to the trial court. ■■■ The true issue before this court, therefore, is whether this defect could be properly waived by the parties at the trial level. We have found two opposing lines of cases which have addressed this problem.

One series of cases maintains that submission of the wrong writ action to the trial court is a waivable defect. If the parties fail to object at trial or otherwise allow inadmissible evidence to be admitted beyond the scope of what would otherwise be allowed, the defect cannot be raised on appeal. The leading cases supporting this analysis are *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543 [314 P.2d 67] [claim of jurisdictional defect in conducting a trial de novo after an administrative hearing had been held was waived when the city attorney opened the case by inviting and stipulating to a view of the premises by the judge and taking of evidence at that place]; *Hoshour* v. *County of Contra Costa* (1962) 203 Cal.App.2d 602 [21 Cal.Rptr. 714] [claim that administrative mandamus, rather than declaratory relief, would have been the appropriate remedy was not available to defendants on appeal where they did not raise the matter at any time during pretrial proceedings or the trial]; and *California Teachers Assn.* v. *Governing Board* (1977) 70 Cal.App.3d 833 [139 Cal.Rptr. 155] [presentation of the matter as a traditional, rather than administrative, writ proceeding was harmless error because there was sufficient evidence in the administrative record alone to reflect an abuse of discretion by the Board, and appellant suffered no prejudice by use of the wrong standard of review].

In contrast, a second line of cases has focused on the court's duty to issue the correct writ of mandate and to apply the appropriate standard of review, based upon the facts of the case. The leading cases following this rationale are *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162] [trial court properly treated action as an

---

[13] The extent and type of evidence is unknown, with the exception of Braud's letter to the Board, dated March 1, 1984, since none of the evidence was included with the transcripts which were entered into evidence as exhibit N at trial.

administrative mandate proceeding, although appellant had brought traditional mandate proceeding; case was reversed for the trial court's failure to use the appropriate standard of review under administrative mandate]; *Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326 [136 Cal.Rptr. 421] [appellate court reviewed as a traditional writ, although action was filed as an administrative writ proceeding, holding that it was the trial court's duty to issue a traditional writ if warranted by the facts, where administrative mandate was not applicable]; *Professional Engineers in Cal. Government* v. *State Personnel Bd.* (1980) 114 Cal.App.3d 101 [170 Cal.Rptr. 547] [cause was remanded to the trial court to proceed under administrative mandamus, not traditional mandamus as it had done, since the facts indicated that review of the administrative record was necessary to determine the Board's actions].

This court is faced, therefore, with determining which line of cases reflects the current trend of the law and the appropriate method for adjudicating the procedural defects arising from the pursuit of an erroneous writ proceeding.

The traditional method of reviewing the quasi-judicial determinations of an administrative agency was by certiorari. (8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 241, p. 864.) Prior to the enactment of Code of Civil Procedure section 1094.5, judicial review of these decisions followed an erratic course of development due to the application of the separation of powers doctrine to legislatively-derived agencies, as distinguished from constitutionally-derived agencies. To add to the confusion, local agencies were allowed to exercise quasi-judicial functions because they were outside the reach of the constitutional mandate of separation of powers at the state level. The use of certiorari was subsequently replaced by mandamus and trial de novo reviews of administrative agency decisions, creating serious procedural problems not solved by statute or rule. (Cal. Administrative Mandamus, *supra*, §§ 1.1-1.2, pp. 3-4.)

■ Code of Civil Procedure section 1094.5 was enacted in 1945 on the recommendations of the Judicial Council. The purpose of the new section, according to the Judicial Council's comments, was to clarify the situation with respect to the procedures for judicial review of adjudicatory decisions by administrative agencies. The council's comments reflect a clear intent to have the new section apply to all agencies. (Cal. Administrative Mandamus, *supra*, § 1.4, pp. 6-7.) As reflected in the more recent cases cited above, there has been an increasing willingness by the courts to extend review by administrative mandamus rather than utilizing the traditional writ procedures.

More importantly, perhaps, is the public policy consideration for utilizing the mechanism of review provided under Code of Civil Procedure section 1094.5. To allow parties to circumvent the system of review provided under 1094.5 would, in effect, undermine the authority and integrity of the hearing procedures which administrative agencies are presently required to render. These agencies have been vested with quasi-judicial authority to hold hearings, take evidence, and render a decision based upon findings of fact. (Cal. Administrative Mandamus, *supra*, § 2.1-2.2, pp. 9-10.) The right to a limited review of that decision by a reviewing court has also been provided. (Code Civ. Proc., § 1094.5.) To allow the parties to challenge every administrative decision with another trial de novo would be a waste of both administrative and judicial resources, and the administrative hearings would be nothing more than perfunctory gestures.

■ Where parties have proceeded under the wrong writ of mandate, therefore, the reviewing court should determine whether the trial court considered the appropriate evidence and applied the appropriate standard of review, based upon the facts of the case.

II. *Standard of Review*

■ Subdivision (c) of Code of Civil Procedure section 1094.5 sets forth the scope of review to be applied when it is claimed that there has been an abuse of discretion because the findings are not supported by the evidence. The trial court is required to exercise independent judgment in cases involving a fundamental vested right. Otherwise, the court limits its review to whether the findings are supported by "substantial evidence in the light of the whole record."

■ We think it is clear, and appellants do not contend otherwise, that no vested right is involved here. ■ In determining whether the right is fundamental, the courts consider the effect of the right in human terms and the importance of it to the individual in the life situation. (*Anton* v. *San Antonio Community Hosp., supra*, 19 Cal.3d 802, citing *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) Generally, these rights focus on a deprivation of property or right to retain one's livelihood. (*Bixby, supra*.) ■ Here, Braud's interest in the grade does not meet the threshold of importance or effect on Braud's life that is described in *Anton* and *Bixby*. Since Braud has no fundamental right in the grade, the "substantial evidence" standard of review applies.

■ Under the substantial evidence test, no evidence other than the administrative record may be introduced at trial. (Cal. Administrative Mandamus, *supra*, § 5.73, p. 86.) The record may be augmented only within

strict limits prescribed by Code of Civil Procedure section 1094.5, subdivision (e).[14]

■ Here, the reporter's transcript reflects that the trial court conducted a full trial, witnesses were presented and evidence taken. These actions by the trial court do not fall within the narrow exception for taking of evidence defined in Code of Civil Procedure section 1094.5, subdivision (e). At the end of trial, counsel agreed that the trial court should take "a new look at the issue," that it is "not bound by whatever grounds or whatever statement that the school board may have made," and that "no record" was furnished by the appellants. These statements are contrary to the evidence presented (which included transcripts of the Board's closed sessions) and the scope of review which the trial court could make under an administrative mandate proceeding.

Furthermore, the transcripts alone do not represent the entire administrative record.[15] ■ Appellants are entitled to have the entire record of the administrative proceedings presented to the court for review. However, appellants have the burden of producing the record when they attack the sufficiency of the evidence. (Cal. Administrative Mandamus (Cont. Ed.Bar Supp. May 1987) § 13.21, pp. 162-163.)

## III. *Administrative Record/Findings*

■ To enable review of an administrative decision, the agency must make findings that will enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise the reviewing court of the basis of the agency's action. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 506.) ■ The findings need not be stated with the formality required in judicial proceedings. However, "implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.* at p. 515.)

In *Topanga,* the applicable statute allowing issuance of variance permits specified elements to be proven before the variance would be granted. The

---

[14] Section 1094.5, subdivision (e), provides: "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment . . . remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

[15] See footnote 10, *ante,* regarding documentation omitted from the administrative record provided the court.

court's findings failed to address these elements; therefore, the reviewing court was unable to determine the basis for the lower court's decision. ██ The Supreme Court stated that "[a]mong other functions, a findings requirement serves to conduce the administrative body to draw legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 516.)

This requirement is particularly crucial where the decision may be based on one or more of several theories, each relating to different factual considerations. In *Jean* v. *Civil Service Commission* (1977) 71 Cal.App.3d 101 [139 Cal.Rptr. 303], for example, an employee was terminated on the grounds of "incompetence and inattention to duties," without any findings of fact being made by the commission. The appellate court reversed and remanded, directing the commission to make findings of fact and to enter its decision in accordance with such findings. The court held that findings were required, since it was unclear whether the physical condition, the alleged violation of disciplinary rules, or both had entered into the termination.

██ Similarly, the absence of findings here has hampered both this court's and the trial court's ability to review the evidence supporting the Board's decision to change the grade. The transcripts of the Board's closed sessions fail to state any findings or the basis upon which they voted to change the grade. Yet, section 49066 specifically authorizes the Board to change a grade *only* if it finds one of the four statutory grounds stated therein. Because there are several possible grounds for the Board's action, the Board must render findings of fact, based upon the evidence presented at the closed sessions, to apprise the reviewing court of the basis for the Board's action.

## IV. *"Bad Faith" and Abuse of Discretion*

Counsel agreed at trial that the sole ground at issue is "bad faith." The partial administrative record is inadequate to show that this was the basis for the Board's action. A finding of bad faith against a professional is a serious challenge to his integrity and professional reputation. This court is unwilling to affirm such allegations where insufficient facts are provided and no findings were made by the Board. Nor will this court infer bad faith where alternative grounds exist for changing a pupil's grade under section 49066.

## V. *Sanctions for Frivolous Appeal*

The Board makes a passing reference in the conclusion of its brief, unsupported by authority, that we should impose sanctions against Braud for filing a frivolous appeal. Every brief should contain a legal argument with citation of authorities on the points made. If none is furnished, the court may treat it as waived, and pass it without consideration. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.) We need not address the Board's suggestion that sanctions be imposed.

### Conclusion

The judgment denying the petition for writ of mandate is reversed and the case remanded to the trial court with the following instructions. The trial court shall enter an order remanding the case back to the Board for the making of specific findings of fact in support of its decision, based upon the evidence presented at the administrative hearings. Should either party again seek court review, the trial court shall then review the administrative record and, based upon the substantial evidence standard of review, determine whether there is substantial evidence to support the Board's findings and whether the findings support the Board's decision.

Rouse, Acting P. J., and Smith, J., concurred.