[No. B134651. Second Dist., Div. Two. Jan. 9, 2001.]

LAS VIRGENES EDUCATORS ASSOCIATION et al., Plaintiffs and
Respondents, v.
LAS VIRGENES UNIFIED SCHOOL DISTRICT et al., Defendants and
Appellants.

## COUNSEL

Law Office of Lawrence B. Trygstad, Rosemary O. Ward and Lawrence B. Trygstad for Plaintiffs and Respondents.

Liebert Cassidy; Bruce A. Barsook; and Arturo Morales for Defendants and Appellants.

## OPINION

**NOTT, J.**—This case arises from the action of Michael Botsford, principal of A.E. Wright Middle School (the middle school), in changing citizenship

marks on the report cards of three students from the marks given them by their teacher, James Ferris. The trial court issued a preliminary injunction requiring appellants to reinstate the original marks given by Ferris pending the outcome of the action.

The Las Virgenes Unified School District (the District), the Board of Education of the Las Virgenes Unified School District (the Board), Michael Botsford, and Robert Clark appeal from the preliminary injunction entered in this action for declaratory and injunctive relief brought by the Las Virgenes Educators Association and Ferris. Appellants contend that the trial court erred in interpreting section 49066 of the Education Code[1] to apply to citizenship marks. The statute requires that a pupil receive the grade determined by the teacher of the course "in the absence of clerical or mechanical mistake, fraud, bad faith, or incompetency." (§ 49066, subd. (a).) Appellants also urge that respondents' exclusive remedy, if any, lay in a writ of administrative mandamus and that respondents failed to join indispensable parties, the parents of the students whose citizenship marks are at issue. We affirm.

The students whose grades are in issue, Josh Bernstein, Pieter Broodryk, and Miles Simon, attended Ferris's music class at the middle school during the fall semester of 1998. They were in sixth grade at the time. The classes were "discovery units" of five weeks' duration. Bernstein and Broodryk attended Ferris's music class from October 13, 1998, to November 19, 1998. In December 1998, Ferris sent progress reports to Bernstein's and Broodryk's parents informing them of their sons' disruptive behavior. Simon attended the class from November 20, 1998, to January 12, 1999. His misbehavior began during the last nine days of class, and Ferris did not send a progress report home for that reason. Grades for the courses were issued and mailed to the parents in February 1999. All three students received A's or B's academically, but N's (needs improvement) or U's (unsatisfactory) for conduct.

The middle school faculty handbook encourages teachers to seek cooperation regarding classroom behavior by communicating directly with parents. Teachers are instructed that they may not give an F to a student unless prior contact has been made to the student's home in accordance with section 49067, which requires the governing board of each school district to prescribe regulations requiring a conference or written report to the parent of

---

[1] All statutory references are to the Education Code, unless otherwise indicated.

each student "in danger of failing a course."[2] Teachers at the middle school are required to give a mark for citizenship. If they fail to designate a grade, an S for satisfactory is recorded.

The parents of the three students contacted Ferris in February 1999. Because of their poor conduct grades, the children were ineligible for the school's honor society and were at risk of not being allowed to attend a school field trip. In each case, the parents also complained to the principal, Botsford. In February 1999, Botsford changed the citizenship marks to S's (satisfactory), enabling the students to be eligible for honor society and to attend the class trip.

Ferris filed a level I complaint with Botsford, his immediate supervisor, concerning what Ferris interpreted to be the improper changing of a grade. In March 1999, Botsford denied the complaint on the ground that the citizenship marks were the product of "clerical or mechanical mistake" pursuant to section 49066 because the parents of the children had not been contacted prior to the issuance of the grades.

Ferris filed a level II complaint. Clark, the assistant superintendent for education, was named as hearing officer. According to Clark, Ferris met with Clark and presented his case on April 6, 1999. Clark ruled that Botsford's decision to change the grade on the grounds of "mechanical mistake" in failing to give the students' parents prior notification was proper under section 49066.

According to Ferris, he did not receive a hearing, but met "briefly with Mr. Duffy." In a declaration, Ferris explains that there "was no hearing officer present at the meeting, no sworn testimony was taken, none of the District's information, if any, was authenticated or under penalty of perjury. [Ferris] was not represented by an attorney at that meeting nor was [he] informed of any of [his] rights. Duffy is not a neutral presiding officer of any kind, rather, an extremely biased District employee. District did not present any documents that [Ferris is] aware of at the meeting nor was there anyone from the District available for [him] to question in any regard."

Ferris filed a level III complaint to the Board. It reviewed the information from levels I and II, and, in May 1999, determined that the level II decision would stand as the final decision regarding Ferris's complaint.

---

[2]Section 51101, subdivision (a)(9), provides that parents of pupils enrolled in public schools have the right "[t]o be informed of their child's progress in school and of the appropriate school personnel whom they should contact if problems arise with their child."

In June 1999, Ferris and the Las Virgenes Educators Association filed the present action for declaratory and injunctive relief. In July 1999, the trial court conducted a hearing on respondents' request for a preliminary injunction. We have not been provided with a reporter's transcript of that proceeding. The trial court took the matter under submission, and subsequently ordered appellants to reinstate the original grades assigned by Ferris. This appeal followed.

DISCUSSION

I. *Writ of administrative mandamus*

■ Appellants contend that respondents' request for injunctive and declaratory relief should have been rejected because a decision to change a grade may only be challenged by petition for a writ of administrative mandamus pursuant to section 1094.5 of the Code of Civil Procedure. Section 1094.5 review lies when the decision challenged was "the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, . . . board, or officer . . . ." (Code Civ. Proc., § 1094.5, subd. (a).)

Section 49070 sets forth the hearing procedures for a parent challenging the contents of a pupil's record. The statute cites section 49066, which prohibits the superintendent or school board from ordering a grade change unless the teacher who determined such grade is included in the procedure. Section 49070 provides for a written request for correction before the district superintendent, a hearing before the superintendent, and, if the superintendent refuses the correction, an appeal to the governing board of the school district. Review of a decision where a hearing has been held in accordance with those statutes is properly conducted pursuant to section 1094.5 of the Code of Civil Procedure. (*Eureka Teachers Assn. v. Board of Education* (1988) 199 Cal.App.3d 353, 364 [244 Cal.Rptr. 240].)

In the present case, the administrative proceeding was brought by the teacher who gave the original grade rather than by a parent. Although section 49070 therefore does not apply, the procedure followed was at least as formal. The District provided a three-step procedure pursuant to section 182.01 of the District's policy and procedures manual. That procedure includes a hearing before a hearing officer appointed by the superintendent of education, and the taking of evidence. Review is by the Board, and its decision is final. A trial-type hearing is not necessary to satisfy the hearing requirement of section 1094.5 of the Code of Civil Procedure, so

long as the agency is required to accept and consider evidence before making its decision. (*Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1391-1392 [61 Cal.Rptr.2d 297].) Judicial review of the Board's decision is proper pursuant to section 1094.5 of the Code of Civil Procedure.

Relying upon *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12], respondents urge that the Board's findings were insufficient to provide a basis for administrative mandamus review. We disagree. *Topanga Assn. for a Scenic Community v. County of Los Angeles* holds that "implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.* at p. 515.) The findings, however, need not be stated with the formality required in judicial proceedings. (*Id.* at p. 517, fn. 16.) The Board's written findings, concluding that the citizenship marks were the result of a mechanical mistake because Ferris failed to provide the parents prior notification of their sons' unsatisfactory behavior is sufficient to bridge the analytic gap.

Respondents also urge, without factual basis beyond the individual's employment by the District, that the hearing officer was not neutral. That statement is insufficient as a basis for finding that the proceeding is not quasi-judicial. Contrary to respondents' position, the present case is not analogous to *McDaniel v. Board of Education* (1996) 44 Cal.App.4th 1618 [52 Cal.Rptr.2d 448], which held that administrative mandamus review was not required because the administrative procedure to determine whether the plaintiff was entitled to early retirement did not include a hearing at which evidence was taken. In the present case, District procedure did mandate a hearing, the taking of evidence, and the finding of facts. The procedure allowed the complainant to appear by a representative and to call witnesses. Ferris maintains that he participated in a meeting before a District employee, rather than a hearing before a hearing officer. Whether or not the complaining party received a fair hearing, however, is among the issues determined in a section 1094.5 proceeding. (Code Civ. Proc., § 1094.5, subd. (b).) We conclude that the proper avenue to review such a decision is pursuant to section 1094.5 of the Code of Civil Procedure.

Appellants have not shown, however, that they were prejudiced by the failure to invoke the proper procedure. Section 1094.5 of the Code of Civil Procedure provides for a stay of the administrative decision pending the judgment of the court unless "the court is satisfied that it is against the

public interest." (Code Civ. Proc., § 1094.5, subd. (g).) Thus, relief equivalent to the preliminary injunction issued herein would also be available in the administrative mandamus proceeding. According to appellants, under section 1094.5, the trial court would have applied the substantial evidence standard in considering its decision to change the citizenship marks. (See *Eureka Teachers Assn. v. Board of Education, supra,* 199 Cal.App.3d at p. 366.) Appellants fail to show, however, that there were any contested material questions of fact. Since the matter was decided purely as a question of law, we conclude that appellants were not prejudiced by recourse to the injunctive proceeding.

## II. *Indispensable parties*

■ Appellants contend that this action must be dismissed because respondents have failed to join the parents of the three affected students as parties to the action. Under section 389, subdivision (a) of the Code of Civil Procedure, a party is necessary where "(1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

In making the determination whether a case should proceed without an absent party, a court must consider and weigh the following factors: (1) the extent to which a judgment may prejudice the absent party or the parties already before the court; (2) the extent to which the prejudice may be lessened or avoided by protective provisions in the judgment; (3) whether a judgment rendered in the person's absence will provide an adequate remedy to the parties before the court; and (4) whether, if the action is dismissed for nonjoinder, the plaintiff will have an adequate remedy elsewhere. (Code Civ. Proc., § 389, subd. (b); *County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1154 [63 Cal.Rptr.2d 277].) Courts have considerable discretion in considering and weighing the factors relevant to a determination of whether a case should proceed without an absent party. (*County of San Joaquin v. State Water Resources Control Bd., supra,* at p. 1154.)

Appellants urge that the interests of the three students' parents are necessarily affected by the ruling and that appellants may be subject to inconsistent obligations should the parents pursue their rights under section 49070.

We conclude that while the parents had an interest in the matter, they were not necessary parties in the sense that the case should be dismissed in their absence as a matter of law.

First, as a practical matter, the matter is moot as to them. At issue were spring 1999 honor society membership and a field trip. Eligibility for those activities was governed by grades received during the fall 1998 semester. The spring 1999 semester had ended before the trial court issued the preliminary injunction. Thus, it appears that the three students had received the benefit of the grade change before the trial court's ruling. While the grade will remain in the students' records, a less-than-satisfactory behavior mark in a five-week 6th grade music course is unlikely to have any lasting impact on the students.

Second, the risk of multiple liability is hypothetical, since the District does not claim that the parents have even threatened to pursue the matter further. (See *Union Carbide Corp. v. Superior Court* (1984) 36 Cal.3d 15, 21 [201 Cal.Rptr. 580, 679 P.2d 14] [substantial risk requires more than a theoretical possibility the absent party's claim would result in multiple liability—the risk must be substantial as a practical matter].)

Third, an existing party, the District, has ably represented the parents' interests. The parents' ability to protect their interests, as a practical matter, was therefore not impaired. (See *Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo* (1985) 172 Cal.App.3d 151, 161 [217 Cal.Rptr. 893]; *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 877 [65 Cal.Rptr.2d 786].) Appellants, although not in precisely the same position as the parents, have protected the parents' interests by urging forcefully that the grade changes should be upheld. We note that the District apparently did not include the parents in its own proceedings regarding the grade change.

Fourth, because the question of whether the students would be entitled to join honor society and attend a field trip for spring 1999 has already been decided, the case is primarily addressed to the scope of the District's authority and only incidentally adjudicates the interests of the students and their parents. (See *People ex rel. Lungren v. Community Redevelopment Agency, supra,* 56 Cal.App.4th 868.)

III. *Grade change*

Section 49066 provides in relevant part: "(a) When grades are given for any course of instruction taught in a school district, the grade given to

each pupil shall be the grade determined by the teacher of the course and the determination of the pupil's grade by the teacher, in the absence of clerical or mechanical mistake, or fraud, bad faith, or incompetency, shall be final." Thus, the Legislature has directed that a grade given by a teacher for any course of instruction is final and can only be changed in limited circumstances. Although the administrative decision was based upon appellants' determination that the citizenship marks were the product of clerical mistake due to Ferris's failure to contact the parents, they do not on appeal urge "clerical or mechanical mistake, fraud, bad faith, or incompetency." Instead, appellants contend that conduct marks are not grades for purposes of section 49066.

■ The fundamental purpose of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. (*People v. Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].) We begin by examining the language of the statute, giving the words their usual and ordinary meaning before resorting to extrinsic aids. (*City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (1999) 72 Cal.App.4th 366, 374 [85 Cal.Rptr.2d 28].) We construe the statute as a whole and in context, avoiding interpretations which render the measure unreasonable, disharmonious, or superfluous in whole or in part. (*Ibid.*)

■ The term "grades" is not defined in section 49066 or in the chapter in which it is found. We therefore look to the usual and ordinary meaning of the term, attempting to avoid an unreasonable construction. A grade is a mark indicating performance in a course of study. (See Webster's Collegiate Dict. (1999) p. 505, which defines "grade" in this sense as "a mark indicating a degree of accomplishment in school.") Performance in secondary school, and certainly in this case, includes both an academic and a behavior component. The two are graded separately, and both become part of the student's permanent record.

Previous cases have held that a grade, for purposes of section 49066, is not limited to a letter grade signifying academic performance. In *Swany v. San Ramon Valley Unified School Dist.* (N.D.Cal. 1989) 720 F.Supp. 764, the court held that a grade of NM, meaning "no mark," in an independent student physical education course was a "grade" for purposes of section 49066. In *Johnson v. Board of Education* (1986) 179 Cal.App.3d 593 [224 Cal.Rptr. 885], the court held that a change from a D to a W, meaning "withdrawal," in a French class, was a change of grade pursuant to section 49066. It reasoned that grades are mandatory records, and that changing a grade includes changing the mark given by a teacher at the end of a semester to anything else.

We conclude that the term "grades" as used in section 49066 includes citizenship marks. The marks are kept as a part of a student's permanent record. They reflect the teacher's assessment of the student's performance in the course in terms of cooperation, attitude, and effort. A student must receive satisfactory citizenship marks in order to be eligible for certain benefits of good performance, including, in this case, honor society and a field trip.

We see no reason that the Legislature would distinguish between the two types of marks for purposes of section 49066. As to both, the teacher is the person in the best position to assess performance. If anything, the citizenship mark is more dependent upon firsthand observation. An administrator's bowing to pressure to change either mark is equally to be avoided.

Appellants contend that "grades" means only the assessment of academic achievement in a course of instruction. They urge that related statutes, sections 51210 and 35160.5, support their position. The term "grades" in section 49066 is used in conjunction with the phrase "for any course of instruction." Course of study for the sixth grade is comprised of certain areas of study, including English, mathematics, and visual and performing arts. (§ 51210.) Appellants contend that the grade for a course of instruction must therefore mean only the academic achievement component of the grade. Similarly, former section 35160.5, subdivision (b) provided that a seventh through twelfth grade student may not participate in extracurricular activities unless he or she attains "minimum passing grades," defined as maintaining at least a 2.0 grade point average. Former section 35160.5 reflected the fact that a student can pass a course despite receiving an unsatisfactory mark in citizenship. Neither of these statutes, however, demonstrates a legislative intent that "grades," as used in section 49066, applies only to the academic component of the student assessment.

Appellants also assert that it is the District's practice, reflected in the report cards themselves, to distinguish between "grades," which relate to academic achievement, and "citizenship and comments," which relate to attitude and effort. We note that the District has not been consistent in drawing this distinction, however, having treated the citizenship marks as grades in the administrative proceeding below.

IV.   *Record change*

The trial court held that even if the citizenship marks were not grades, the District exceeded its authority by changing the marks, absent a procedure for doing so. We agree, although on different grounds. Section 35160 provides

that a school district "may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established." Absent a statutory or other limitation, a district is free to act as it sees fit within the purposes for which it was established. Absent a contrary statute, the District had discretion to permit a change in the citizenship mark on the ground that the parents had not received prior notification.

The Education Code provides a procedure for changing student records which are not grades. That procedure is set forth in section 49070. (See *Johnson v. Board of Education, supra,* 179 Cal.App.3d at p. 599.) Appellants concede in their opening brief that if citizenship marks are not grades, then they are school records subject to change pursuant to section 49070.

Section 49070 states that a parent can request a change of a school record upon grounds that the record is "inaccurate," "[a]n unsubstantiated personal conclusion or inference," "[a] conclusion or inference outside of the observer's area of competence," or "[n]ot based on the personal observation of a named person with the time and place of the observation noted." (§ 49070, subd. (a).) Since none of those circumstances is present here, the District exceeded its authority in changing the citizenship marks under section 49070.

## DISPOSITION

The order appealed from is affirmed.

Boren, P. J., and Cooper, J., concurred.