55 Cal.Rptr.3d 374 (2007)
148 Cal.App.4th 142
STATE BOARD OF CHIROPRACTIC EXAMINERS et al., Petitioners,
v.
The SUPERIOR COURT of Sacramento COUNTY, Respondent,
Carole M. Arbuckle, Real Party In Interest.
No. C052554.
Court of Appeal of California, Third District.
February 28, 2007.
As Modified February 28, 2007.
*376 Bill Lockyer, Attorney General, Jacob Appelsmith, Senior Assistant Attorney General, Alicia M.B. Fowler, Lyn Harlan and Noreen P. Skelly, Deputy Attorneys General, for Petitioners.
No appearance for Respondent.
Garcia & Associates, Gaspar Garcia, II, Sacramento, for Real Party in Interest.
*375 MORRISON, J.
Carole M. Arbuckle sued her employer, the State Board of Chiropractic Examiners and its executive director, Jeanine R. Smith (collectively the Board except where context indicates otherwise), alleging adverse employment actions were taken against her in retaliation for her whistle-blower reports, specifically her allegation that a member of the Board allowed the member's own chiropractic license to expire but improperly continued to act as a Board member. Arbuckle first filed a complaint with the State Personnel Board (SPB) but did not request a hearing after receiving an adverse "Notice of Findings" from the SPB executive officer. She then filed this civil tort suit. The Board unsuccessfully moved for summary judgment, arguing this suit was barred for her failure to exhaust administrative and judicial remedies. After the Board petitioned this court for a writ of mandate, we issued an alternative writ and stayed the proceedings.
The adverse notice of findings was deemed to be the final decision of the SPB when it went unchallenged. Had Arbuckle requested a hearing the SPB would either have granted it, resulting in a new SPB decision which could be challenged by a writ of administrative mandamus, or the SPB would have denied it, and adopted the notice of findings as its own decision, which similarly could be challenged. The fact that the SPB has discretion whether to grant a further hearing does not give a claimant the right to abort the administrative remedies and proceed to court. The statutes and pertinent regulations governing whistleblower claims contemplate a civil suit may be filed after the SPB finds in favor of the claimant or fails to issue findings, *377 not where the SPB finds against the claimant and the claimant fails to to set that finding aside. The unchallenged notice of findings, deemed to be the SPB decision, is a quasi-judicial decision that no retaliation occurred: It bars Arbuckle's suit under principles of issue preclusion (collateral estoppel). Accordingly, the Board was entitled to summary judgment and we shall issue a writ so ordering.

PROCEDURAL BACKGROUND
On June 17, 2002, Arbuckle filed her complaint with the SPB, which she amended on July 23, 2002. The gist was that although she had been a good employee, after she discovered that a Board member's license had lapsed the Board retaliated against her in various ways.
On August 14, 2002, the SPB adopted regulations governing whistleblower complaints, effective immediately. The parties agree that those regulations govern this case. Those regulations were substantially amended in March 2006. For convenience, we provide the text of the former regulations in an appendix. We will cite to them as "former Rule ___" to distinguish them from current provisions of the California Code of Regulations.
On November 6, 2002, Arbuckle filed a claim with the State Board of Control, which was rejected.
The SPB Executive Officer served a notice of findings on January 28, 2003, rejecting Arbuckle's complaint. This is not a summary rejection, but a 16-page analysis of the facts and law based on his review of over 500 pages of documents submitted by Arbuckle and the Board. (See Gov.Code, § 18675, subd. (b); further unspecified section references are to this code.) The decision discusses in detail the alleged protected acts Arbuckle took as a whistleblower and the alleged acts the Board took to punish her. It found that some of her acts qualified as "protected disclosures" in the rubric of whistleblower cases, but only two of her claims of adverse actions satisfied the legal standard. There was no "nexus," or showing that a cause of those adverse actions was the disclosures, because Arbuckle failed to show that those who took the adverse actions knew about the disclosures. (See Patten v. Grant Joint Union High School Dist. (2005) 134 Cal.App.4th 1378, 1384, 37 Cal.Rptr.3d 113; Morgan v. Regents of University of California (2000) 88 Cal.App.4th 52, 69-70, 105 Cal.Rptr.2d 652.) In any event, the Board showed "by clear and convincing" evidence that the same employment actions would have been taken.
The notice of findings states Arbuckle could "petition for hearing" before the SPB "no later than 30 days" after service; "If no party files a petition for hearing within 30 days following service of this Notice of Findings, this recommendation shall become the final decision of the [SPB]. If any party files a timely petition for hearing, this Notice of Findings shall become the final decision of the [SPB] if all such timely filed petitions for hearing are ultimately denied by the [SPB]."
Arbuckle conceded in the trial court that she did not petition for a hearing, and that by operation of law the Notice of Findings became a final SPB decision, and that she did not seek judicial review by filing a writ of administrative mandate.
Instead, on February 21, 2003, before the 30 days in which to petition the SPB for a hearing elapsed, Arbuckle filed the instant suit. The complaint is difficult to understand because it is clogged with evidentiary facts and legal assertions, and fails to state claims "in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1); cf. Krug v. Meehan (1952) 109 Cal.App.2d 274, 277, 240 P.2d 732 ["The *378 complaint must allege ultimate facts, not evidentiary facts or conclusions of law"].) However, Arbuckle does not dispute that it is based on the same facts as the SPB complaint.
On April 17, 2008, Judge Gray overruled a demurrer based on judicial exhaustion, finding that "filing the claim with the SPB is the only requirement prior to suit." On December 1, 2004, Judge Cecil denied a summary judgment motion on the same ground.
On January 26, 2006, the Board again moved for summary judgment, alleging that an intervening California Supreme Court decision, Campbell v. Regents of University of California (2005) 35 Cal.4th 311, 25 Cal.Rptr.3d 320, 106 P.3d 976 {Campbell), justified bringing a new motion because it changed the law. The relevant facts supporting and opposing the motion consist of the procedural history we have outlined, as well as judicial notice of pertinent statutes and regulations.
After Judge Chang denied the motion the Board filed this mandamus petition. We stayed the trial court proceedings and issued an alternative writ.

DISCUSSION
We will first briefly discuss the doctrines of administrative and judicial exhaustion. We will then outline the proceedings which were available to Arbuckle. We will then discuss the theories raised by Arbuckle in defense of her claimed entitlement to pursue a tort suit.

I. Administrative and Judicial Exhaustion
Administrative and judicial exhaustion questions may overlap and some cases speak of one when they mean the other. (Knickerbocker v. City of Stockton (1988) 199 Cal.App.3d 235, 240-245, 244 Cal.Rptr. 764 [distinguishing the two and exposing confusion in other cases] (Knickerbocker).)
"[I]n Westlake Community Hosp. v. Superior Court [ (1976) 17 Cal.3d 465, 131 Cal.Rptr. 90, 551 P.2d 410 (Westlake)], this court held that unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions.[fn.] This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. [Citation.] Exhaustion of administrative remedies is `a jurisdictional prerequisite to resort to the courts.' [Citations.] Exhaustion of judicial remedies, on the other hand, is necessary to avoid giving binding `effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action.' [Citation.]
"In Westlake, supra, 17 Cal.3d 465, [131 Cal.Rptr. 90, 551 P.2d 410,] a hospital's revocation of a doctor's staff privileges was upheld by the hospital's judicial review committee and board of directors. Without first challenging the board's final decision in an administrative mandate proceeding in superior court, the doctor filed a tort action in superior court. We held that `plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants.' . . . We explained that `so long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the [defendant's] action.' [Citation.] A quasi-judicial decision is set aside when a court in a mandate *379 proceeding determines that the decision cannot stand `either because of a substantive or procedural defect[.]' [Citation.]"
"Paramount to the Westlake holding were these two reasons: (1) the interest in according proper respect to an administrative agency's quasi-judicial procedures by precluding a party from circumventing the established process for judicial review of such decisions by means of a petition for administrative mandate; and (2) `providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions.'" (Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 69-70, 99 Cal.Rptr.2d 316, 5 P.3d 874 (Johnson).)
As we will explain, Arbuckle's failure to overturn the notice of findings precludes her tort suit because it binds her as to all issues actually litigated. (Knickerbocker, supra, 199 Cal.App.3d at pp. 242-245, 244 Cal.Rptr. 764.) Further, it is not usually enough to invoke an administrative forum, a claimant must pursue the matter through all extant administrative review procedures. (See Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd. (2005) 35 Cal.4th 1072, 1080, 29 Cal.Rptr.3d 234, 112 P.3d 623 (Coachella); City of Fresno v. Superior Court (1987) 188 Cal.App.3d 1484, 1489, 234 Cal.Rptr. 136 (Fresno); 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 108, pp. 171-173.)

II. Whistleblower Claims
The SPB is a statewide agency entrusted by the California Constitution to administer the civil service system. (Cal. Const., art. VII, § 3; see Alameida v. State Personnel Bd, (2004) 120 Cal.App.4th 46, 52-53, 15 Cal.Rptr.3d 383; Gonzalez v. State Personnel Bd. (1995) 33 Cal.App.4th 422, 428, 39 Cal.Rptr.2d 282.)
Two statutes relevant to this case provide remedies for workers punished for making protected "whistleblower" disclosures, but the remedies are quite different.
First, Labor Code section 1102.5 prohibits retaliation where any employee  public or private  makes a good-faith report of a suspected violation of a state or federal statute or regulation. Some federal decisions have held this statute requires exhaustion of remedies before the Labor Commissioner. (Neveu v. City of Fresno (E.D.Cal.2005) 392 F.Supp.2d 1159, 1179-1180; Gutierrez v. RWD Technologies, Inc. (E.D.Cal.2003) 279 F.Supp.2d 1223, 1225-1228.) Whether or not that is correct, the California Supreme Court has held that a party pursuing a Labor Code section 1102.5 claims must exhaust available internal administrative remedies. (Campbell, supra, 35 Cal.4th at pp. 331-333, 25 Cal.Rptr.3d 320, 106 P.3d 976.) A public employee might be able to bypass such a remedy if there were a good excuse (e.g., futility), but not in the ordinary case. (Coachella, supra, 35 Cal.4th at pp. 1080-1082, 29 Cal.Rptr.3d 234, 112 P.3d 623; see Hood v. Hacienda La Puente Unified School Dist. (1998) 65 Cal.App.4th 435, 439, 76 Cal.Rptr.2d 448 [§ 8547.8, subd. (c) case] (Hood).)
To get damages a state employee must invoke a second statutory scheme, the California Whistleblower Protection Act. (§ 8547 et seq. ("Act"); see Hood, supra, 65 Cal.App.4th at pp. 439-440, 76 Cal. Rptr.2d 448.) Under the Act, any person who engaged in the retaliation may be liable for damages. (§ 8547.8, subd. (c); see Campbell, supra, 35 Cal.4th at p. 327, 25 Cal.Rptr.3d 320, 106 P.3d 976 [construing parallel statute, § 8547.10, subd. (c), applicable to University of California employees].)
First, under a statute cross-referencing the Act the SPB can award damages. The *380 SPB investigates retaliation claims and "The executive officer shall complete findings of the hearing or investigation within 60 working days thereafter, and shall provide a copy of the findings" to the parties. (§ 19683, subd. (a).) If he or she finds retaliation took place the offending manager may appeal to the SPB to contest that finding. (Id., subd. (b).)
"If, after a hearing, the State Personnel Board determines that a violation of section 8547.3 occurred, or if no hearing is requested and the findings of the executive officer conclude that improper activity has occurred, the board may order any appropriate relief, including, but not limited to, reinstatement, back-pay, restoration of lost service credit, if appropriate, compensatory damages, and the expungement of any adverse records of the state employee or applicant . . . who was the subject of the alleged acts of misconduct prohibited by Section 8547.3." (Gov.Code, § 19683, subd. (c), italics added.)
The remainder of section 19683 explains what happens to the employee found by the SPB to have retaliated and requires the SPB to make reports to the Governor and Legislature. (Gov.Code, § 19683, subds.(d)-(f).) The only portion of section 19683 describing the rights of the victim is subdivision (c), just quoted, which speaks in terms of findings that retaliation took place, that is, findings favorable to the complaining employee.
Second, the Act in some cases allows a civil suit. However, the scope of such suit is more limited than Arbuckle supposes. We quote the relevant passage in full:
"In addition to all other penalties provided by law, any person who intentionally engages in act& of reprisal, retaliation, threats, coercion, or similar acts against a state employee or applicant for state employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party. Punitive damages may be awarded by the court where the acts of the offending party are proven to be malicious. Where liability has been established, the injured party shall also be entitled to reasonable attorney's fees as provided by law. However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a), and the board has issued, or failed to issue, findings pursuant to Section 19683." (Gov.Code, § 8547.8, subd. (c).)
There are two significant features of this statute. First, the statute speak of penalties. It applies in addition to "all other penalties" provided by law, and allows for punitive damages for malicious acts and attorney fees. Generally speaking, "a `penalty' includes any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him for a legal damages done him by the former." (Miller v. Municipal Court (1943) 22 Cal.2d 818, 837, 142 P.2d 297; see People ex rel. Dept. of Conservation v. Triplett (1996) 48 Cal.App.4th 233, 252, 55 Cal. Rptr.2d 610.) Thus, this provision addresses how the employee may get penalties beyond the restorative award the SPB has made pursuant to Government Code section 19683, subdivision (c), quoted above.
Second, it applies where and only where the SPB "has issued, or failed to issue, findings pursuant to Section 19683." The findings referred to in section 19683 are findings favorable to the employee, as just explained. Therefore, when a state employee files a whistleblower claim with the SPB there are three possibilities:
*381 1) If the SPB issues findings favorable to the employee, it will make a restorative award (backpay and so forth) and the employee may file a tort suit seeking other damages (e.g., punitive damages). This allows an immediate restoration to the employee of salary and other benefits, while allowing him or her to choose whether to seek additional compensation via the civil tort system.
2) If the SPB fails to issue any findings, again a tort suit is authorized by Government Code section 8547.3, subdivision (c). This allows the employee to bypass the administrative forum because that forum failed to resolve the issue. Absent this provision, the employee would be relegated to filing a writ of mandate to compel the SPB to issue findings. (See California Correctional Peace Officers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133, 1138, 1146, 43 Cal.Rptr.2d 693, 899 P.2d 79.) This is consistent with other statutes, generally referred to as "deemed approved" statutes, which provide that an agency which fails to act on a matter within a certain time will be deemed to have acted in a certain way, to allow citizens to get on with their business without "protracted and unjustified governmental delays" by governmental agencies in making required decisions. (Bickel v. City of Piedmont (1997) 16 Cal.4th 1040, 1046, 68 Cal. Rptr.2d 758, 946 P.2d 427.) Here, the SPB made findings when the decision of the Executive Officer was "deemed to be the [SPB]'s final Decision" (former Rule 56.5) after Arbuckle failed to request a hearing.
3) If the SPB issues findings adverse to the employee, unless the employee succeeds in overturning that decision by a writ of administrative mandate, a civil tort suit on the same claim would be barred by judicial exhaustion (issue preclusion). Section 8547.3, read in context, does not allow a suit based on adverse findings. The SPB is an administrative agency endowed by the Constitution with quasi-judicial powers. (Larson v. State Personnel Bd. (1994) 28 Cal.App.4th 265, 273, 33 Cal. Rptr.2d 412.) When a party to a quasi-judicial proceeding fails to challenge the agency's adverse findings by means of a writ of mandate action in superior court, the adverse findings are binding in later civil actions. (Johnson, supra, 24 Cal.4th at pp. 69-71, 99 Cal.Rptr.2d 316, 5 P.3d 874; Knickerbocker, supra, 199 Cal.App.3d at p. 243, 244 Cal.Rptr. 764.)
Any other conclusion would mean the administrative proceeding was a waste of time. (See Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1090, 6 Cal. Rptr.3d 457, 79 P.3d 569 ["refusing to give binding effect to those quasi-judicial findings would `undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation' "] (Schifando); Knickerbocker, supra, 199 Cal.App.3d at p. 243, 244 Cal. Rptr. 764 ["it would render the administrative hearing a meaningless and idle act"].) However, as a time-honored maxim of jurisprudence puts it, "The law neither does nor requires idle acts." (Civ.Code, § 3532.)

III. Arbuckle's Appellate Claims
We now consider Arbuckle's various claims why she should be allowed to pursue her civil tort suit without first overturning the notice of findings.

A. Claim that any SPB findings authorize suit

Arbuckle contends she is entitled to file a civil action on her section 8547.8 claim once she received the notice of findings, regardless of what those findings were. We disagree. The proceeding before the executive officer was not a mere *382 "investigation" as Arbuckle implies: It was a contested proceeding based on opposing evidentiary submissions. (Cf. McDaniel v. Board of Education (1996) 44 Cal.App.4th 1618, 1621-1622, 52 Cal.Rptr.2d 448 [no hearing of any kind held].) In this case, the SPB was required by law to accept Arbuckle's complaint and refer the matter to its Executive Officer, who was required to consider and did consider voluminous papers containing arguments as well as documentary evidence.
Under the then-applicable rules, the complainant had to file a written statement under penalty of perjury, with supporting documentation and list of witnesses, of the whistleblower report and the alleged retaliation therefor. (Former Rule 56.1(d).) Respondents had to file a written response with similar detail, and the complainant could file a written reply. (Former Rule 56.2(e)-(f).)
The SPB Appeals Division could continue investigation of the complaint after the responses, "with or without a hearing[.]" (Former Rule 56.2(g).) Within 60 days (unless the time was tolled or waived) the Executive Officer issued a Notice of Findings. (Former Rule 56.2(i).) "In those cases where the Executive Officer concludes that the complainant failed to prove the allegations of retaliation by a preponderance of the evidence, the Notice of Findings shall, except in those instances where the findings address jurisdictional and/or procedural matters, specifically address each allegation contained within the complaint." (Former Rule 56.2(j).) If questions of fact remained, the Executive Officer could "assign the case to an evidentiary hearing" before an ALJ. (Former Rule 56.2(Z).)
However "If the Notice of Findings concludes no retaliation occurred, the complainant may file a Petition for Hearing before the [SPB]." (Former Rule 56.3(a).) That petition had to be filed within 30 days of service of the findings and specify the factual basis for the petition. (Former-Rules 56.3(b)-(c).)
Once the notice of findings went unchallenged 30 days after service, it became the decision of the SPB and it carried all of the force of a board decision. (Former Rule 56.5.) In other words, it became the decision of the body entrusted by the California Constitution to adjudicate matters within its purview, including claims of retaliation.
That the executive officer conducted his hearing on documentary submissions is of no moment. "The executive officer shall administer the civil service statutes under rules of the [SPB]." (Cal. Const., art. VII, § 3, subd. (b).) He or she "shall perform and discharge under the direction and control of the board the powers, duties, purposes, functions, and jurisdiction vested in the board and delegated to him by it" (Gov.Code, § 18654) and "shall administer the civil service statutes under rules of the board, subject to the right of appeal to the board" (Gov.Code, § 18654.5). Hearings are governed by rules prescribed by the SPB, but "In the conduct of any hearing or investigation any informality in any proceeding or in the manner of taking testimony shall not invalidate any order, decision, or rule made, approved, or confirmed by the board." (Gov.Code, § 18675, subd. (a).)
The fact this was not a hearing with live testimony, but instead what the Attorney General calls a "documentary" hearing does not undermine its validity. It is not the case that only a trial-like hearing is entitled to dignity. (Saleeby v. State Bar (1985) 39 Cal.3d 547, 565, 216 Cal.Rptr. 367, 702 P.2d 525.) Further, Arbuckle could have included in a mandate petition the claim that the documentary-only hearing violated due process or that some irregularity *383 in the conduct of that hearing rendered it unfair. (Las Virgenes Educators Assn. v. Las Virgenes Unified School Dist. (2001) 86 Cal.App.4th 1, 7, 102 Cal.Rptr.2d 901 (Las Virgenes ).)
Once the time passed in which to seek review, "the Notice of Findings shall be deemed to be the Board's final Decision in the matter, and no named party to the action shall be deemed to have any right of further appeal to the Board." (Former Rule 56.5.)
Arbuckle posits an absurdity, as follows:
"Requiring a claimant to request a hearing before the [SPB] creates two classes of claimants, which produces absurd results. One type of claimant would be denied a hearing by the SPB and would enjoy all of the protections of the Whistle Blower Protection Act, including an action for damages . . . including individual liability and attorneys' fees, and punitive damages if malice were proven. The other class . . . would be persons for whom the SPB granted a hearing and lost at the hearing. This class of claimants would be required to file a writ of mandate after losing at the [SPB]. . . . Even if a claimant won the writ and ultimately prevailed at the SPB, the claimant would be deprived of the action for damages, individual liability, attorneys' fees, and punitive damages. A claimant would only be entitled to the damages set forth in Government Code § 19683(c), which only includes back pay, reinstatement, restoration of lost service credit, if appropriate, compensatory damages, and the expungement of any adverse records. Thus, requiring a claimant to request a hearing when they have no entitlement to the hearing, causes a splintering of claimants who are treated differently, . . ."
This analysis is wrong on both counts. The first class of claimants, denied a hearing by the SPB and therefore consisting of those who lost in the notice of findings procedure, would be barred from recovery by the preclusive effect of the findings, deemed by law to the final SPB decision. (Former Rule 56.5.) The second class of claimants, if they overturned the SPB findings, would get the restorative award provided by section 19683, subdivision (c), and then could pursue the individuals responsible for punitive damages and attorney fees.

B. Claim that hearing not required by law

Arbuckle's next theory begins with the fact that a writ of administrative mandate is available only in cases where by law a hearing is required:
"Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury." (Code Civ. Proc., § 1094.5, subd. (a).)
A hearing was conducted by the executive officer, based on written submissions and in the exercise of his delegated fact-finding powers. But Arbuckle observes that the SPB could have denied her a hearing had she asked for one and therefore she reasons that no hearing was "required" by law. From this conclusion she asserts that she had no duty to exhaust administrative remedies.
She is wrong for several reasons.
First, "A trial-type hearing is not necessary to satisfy the hearing requirement of section 1094.5 of the Code of Civil Procedure, *384 so long as the agency is required to accept and consider evidence before making its decision." (Las Virgenes, supra, 86 Cal.App.4th at pp. 6-7, 102 Cal.Rptr.2d 901.) The following passage is instructive:
"This decision was not made in a bureaucratic vacuum leaving an inadequate paper trail, as the 600-plus page administrative record demonstrates. Significantly, courts and commentators have found that purely documentary proceedings can satisfy the hearing requirement of Code of Civil Procedure section 1094.5, so long as the agency is required by law to accept and consider evidence from interested parties before making its decision. [Citations.]" (Friends of the Old Trees v. Department of Forestry & Fire Protection (1997) 52 Cal.App.4th 1383,1391-1392, 61 Cal.Rptr.2d 297.)
Second, the SPB's discretion regarding the petition for hearing was carefully circumscribed:
"(e) In reviewing any such Petition for Hearing, the Board shall determine whether the Notice of Findings conforms to the requirements of Section 56.3(c)[sic ], and whether the Notice of Findings is supported by substantial evidence.
"(f) If the Petition for Hearing is denied, the Board shall issue a Decision that adopts the findings of the Executive Officer as its own decision in the matter.
"(g) If the Petition for Hearing is granted by the Board, the Board shall issue a resolution rejecting the findings of the Executive Officer and assign the matter to an administrative law judge, who shall conduct an evidentiary hearing in accordance with those statutes and regulations governing the conduct of Board evidentiary hearings, and issue a Proposed Decision for the Board's review and consideration." (Former Rule 56.3.)
Thus, the SPB's discretion whether or not to grant a hearing was not as broad as Arbuckle implies. A hearing could be granted if and only if the SPB determined substantial evidence did not support the Notice of Findings or if those findings were procedurally defective. (Former Rule 56.3(e).) If substantial evidence supported the findings and they adequately addressed the issues, the SPB would adopt the Notice of Findings "as its own decision in the matter." (Former Rule 56.3(f).) Otherwise, the SPB had to reject the Notice of Findings and assign the case to an ALJ for a new hearing, which could itself lead to an SPB decision. (Former Rule 56.3(g)-(i).) Thus, the documentary hearing, if challenged by a petition for a hearing by the SPB, would be reviewed and either adopted by the SPB or vacated and the matter reexamined by an ALJ. The SPB forum provided a facially fair and thorough hearing procedure "required by law" to evaluate claims of retaliation, a forum Arbuckle abandoned in midstream.
Third, the fact the SPB had discretion whether or not to grant a hearing is a red herring. In People ex rel. Cal Regional Wat. Quality Control Bd, v. Barry (1987) 194 Cal.App.3d 158, 239 Cal.Rptr. 349 a state board declined to grant a petition for review of a regional board's decision. We first pointed out that the fact the regional board's decision could not be reviewed by "appeal" but only by "petition" meant discretion whether or not to grant review was vested in the reviewing board. (Id. at p. 171, 239 Cal.Rptr. 349.) But the fact the reviewing board had discretion not to grant the petition did not undermine the validity of the underlying decision: "[W]hen the state board denied Barry's petition for review, the regional board's orders were final. At that point, Barry could have challenged those orders by way of mandate in the superior court. . . ." (Id. *385 at p. 177, 239 Cal.Rptr. 349.) So, too, here: Had Arbuckle asked for and been denied a hearing, the SPB would have adopted the Notice of Findings (former Rule 56.3(f)) which could have been challenged by a writ of mandate.
Even if we concluded the documentary hearing was not a sufficient hearing "required by law," Arbuckle would still not be free to ignore the results of this procedure.
"The proper method of obtaining judicial review of most public agency decisions is by instituting a proceeding for a writ of mandate. [Citation.] Statutes provide for two types of review by mandate: ordinary mandate and administrative mandate. (Code Civ. Proc., §§ 1085, 1094.5.) The nature of the administrative action or decision to be reviewed determines the applicable type of mandate. [Citation.] In general, quasi-legislative acts are reviewed by ordinary mandate and quasi-judicial acts are reviewed by administrative mandate. [Citations.] But judicial review via administrative mandate is available `only if the decision[ ] resulted from a "proceeding in which by law: 1) a hearing is required to be given, 2) evidence is required to be taken, and 3) discretion in the determination of facts is vested in the agency. [Citations.]" [Citations.]' Thus, ordinary mandate is used to review adjudicatory actions or decisions when the agency was not required to hold an evidentiary hearing." (Bunnett v. Regents of University of California (1995) 35 Cal.App.4th 843, 848, 41 Cal. Rptr.2d 567, italics added (Bunnett).)
"[T]he absence of an evidentiary hearing does not make mandate inapplicable: it merely affects the form of mandate that must be invoked," either ordinary or administrative. (Bunnett, supra, 35 Cal. App.4th at p. 849, 41 Cal.Rptr.2d 567.) Thus, the fact the SPB had discretion to deny a hearing does not have the legal effect Arbuckle asserts, and does not give her leave to fail to ask for a hearing. (See DeCuir v. County of Los Angeles (1998) 64 Cal.App.4th 75, 82-83, 75 Cal.Rptr.2d 102.)
The fact the SPB was not required to grant a petition for hearing had no bearing on Arbuckle's ability to challenge the adverse quasi-judicial finding by a writ of administrative mandate prior to filing a civil suit.
When Arbuckle declined to challenge the notice of findings by requesting a hearing, those findings became findings of the SPB by operation of law, as she conceded in the trial court. (Former Rule 56.5.) That is, the executive officer's finding of no retaliation became a quasi-judicial finding of the SPB. Because the undisputed evidence shows that Arbuckle has not set that finding aside, it precludes her civil action which is predicated on the same factual claims of retaliation. (Knickerbocker, supra, 199 Cal.App.3d at pp. 242-245, 244 Cal.Rptr. 764.)

C. Compliance with the Tort Claims Act

Arbuckle contends her Labor Code section 1102.5 claim was exhausted because she filed a claim under the California Tort Claims Act (§ 810 et seq.) and had no need to file a claim with the labor commissioner. Regardless of whether any employee must submit Labor Code section 1102.5 claims to the labor commissioner, Arbuckle, as a state employee, had to file her claim with the SPB to be able to get damages; because her claim was rejected she is barred by judicial exhaustion regardless of her compliance with the Tort Claims Act.
"The doctrine of exhaustion of administrative remedies evolved for the benefit of the courts, not for the benefit of litigants, the state or its political subdivisions. *386 . . . The claim-filing requirements of the Government Code are directly related to the doctrine of governmental immunity and exist for the benefit of the state, not the judicial system; they were adopted by the Legislature in the exercise of its legislative prerogative to impose conditions is a prerequisite to the commencement of any action against the public entity. [Citation.] The doctrine of exhaustion of administrative remedies has no relationship whatever to [the California Tort Claims Act]." (Bozaich v. State of California (1973) 32 Cal.App.3d 688, 698, 108 Cal.Rptr. 392; see 1 Cal. Administrative Mandamus (Cont.Ed.Bar 2004) Laying the Foundation at the Administrative Healing, § 3.79, pp. 96-97.)
"The presentation of a claim pursuant to the Tort Claims Art is a separate, additional prerequisite to commencing an action against the slate or a local public entity and is not a substitute for the exhaustion of an administrative remedy." (Richards v. Department of Alcoholic Beverages Control (2006) 139 Cal.App.4th 304, 315, 42 Cal.Rptr.3d 782.)
Arbuckle relies on cases involving a claim resolved under the Fair Employment and Housing Act (FEHA), within the jurisdiction of the Department of Fair Employment and Housing (DFEH). But in such cases a public employee need not exhaust an internal administrative remedy because that would duplicate the administrative remedy provided by DFEH and "frustrate the Legislature's intent," which was to provide a different forum which an employee might find more favorable in a given case. (Schifando, supra, 31 Cal.4th at pp. 1085-1087, 6 Cal.Rptr.3d 457, 79 P.3d 569; Ruiz v. Department of Corrections (2000) 77 Cal.App.4th 891, 897-898, 92 Cal.Rptr.2d 139.) In the case relied on by Arbuckle, Murray v. Oceanside Unified School Dist. (2000) 79 Cal.App.4th 1338, 95 Cal.Rptr.2d 28 (Murray), the trial court held a sexual orientation discrimination claim was barred because of an untimely tort claim. Murray concluded then-recent amendments to FEHA applied retrospectively to the claims and for that reason strict compliance with the Tort Claims Act was unnecessary, as FEHA contains its own time limitations which Murray's tort claim met. (Id. at pp. 1358-1361, 95 Cal. Rptr.2d 28.) Murray does not support Arbuckle's assertion that filing a tort claim exhausts administrative remedies for a non-FEHA claim, particularly a whistleblower claim. (See Williams v. Housing Authority of Los Angeles (2004) 121 Cal. App.4th 708, 729-731, 17 Cal.Rptr.3d 374 [as to non-FEHA-related claims, normal exhaustion rules apply].)
Instead, as we have explained, where an employee receives an unfavorable administrative decision, "We serve judicial economy by giving collateral estoppel effect" to that decision, which "requires employees challenging administrative findings to do so in the appropriate forum, by filing a writ of administrative mandamus petition in superior court." (Schifando, supra, 31 Cal.4th at p. 1090, 6 Cal.Rptr.3d 457, 79 P.3d 569, discussing Johnson, supra, 24 Cal.4th 61, 99 Cal.Rptr.2d 316, 5 P.3d 874.)
As a practical matter, even if a state employee need not submit a Labor Code section 1102.5 claim to the labor commissioner, he or she must submit the claim to the SPB in order to pursue the damage remedies available under Government Code section 8547.8, as Arbuckle did in this case. The filing of the Tort Claims Act has no bearing on the binding effect of the SPB finding as to issues actually adjudicated. (Knickerbocker, supra, 199 Cal. App.3d at pp. 242-245, 244 Cal.Rptr. 764.)

D. The March 2006 Regulation

Arbuckle claims that the SPB's March 2006 revision of the whistleblower *387 regulations support her position. Although Arbuckle concedes the revision does not directly govern this case, she reasons that it represents some administrative determination about the interplay between SPB remedies and a civil suit. The current relevant regulation reads in part as follows:
"(b) In those cases where the Executive Officer concludes that the allegations of retaliation were not proven by a preponderance of the evidence, the Executive Officer shall issue a Notice of Findings dismissing the complaint. The Notice of Findings shall notify the complainant that his or her administrative remedies have been exhausted and that the complainant may file a civil complaint with the superior court pursuant to Government Code Section 8547.8(c)." (Cal.Code Regs., tit. 2, § 56.5.)
We will not defer to this new regulation as some sort of administrative interpretation of what the law used to be. First, plainly it changed the former regulation. Second, even if this could be read to mean that losing before the executive officer provides a ticket of admission to a jury trial, such an interpretation trenches on the legislative and judicial power to regulate what remedies are available and does not fall within the expertise of the SPB. The extent to which an administrative decision does or does not have any impact on a superior court suit is not a matter falling with the SPB's expertise; and its view of the matter, if indeed it intended to express any view on that matter, is entitled to little  if any  weight. (See Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 11-13, 78 Cal. Rptr.2d 1, 960 P.2d 1031.) We deny the Board's request for judicial notice of the applicable rulemaking file.
As we have explained, the statutes provide that a state employee must file a complaint with the SPB and if she or he loses, a tort suit will be judicially precluded by operation of the statutes and well-settled legal doctrine, which cannot be altered by an SPB regulation. As the Board observes: "Allowing an unsuccessful SPB litigant to simply ignore an adverse SPB result would render SPB proceedings meaningless, and would only encourage gamesmanship from complainants who `save' their evidence and efforts for judicial litigation. The Legislature could not have intended such a result."
Indeed, to the extent the new rule appears to discourage a litigant to follow the administrative proceedings to its end, it appears to be an effort to lighten the SPB's caseload, in defiance of the relevant statutes. An agency cannot issue a regulation undermining its statutory duties. (Bank of Italy v. Johnson (1926) 200 Cal. 1, 15, 251 P. 784; Caldo Oil Co. v. State Water Resources Control Bd. (1996) 44 Cal.App.4th 1821, 1827, 52 Cal.Rptr.2d 609.) The new regulation authorizes civil suits which will then be barred by the failure to exhaust administrative and judicial remedies under the current statutory scheme. A regulation, such as this one, that is inconsistent with the statutes it purports to implement is invalid.

E. Conclusion

Arbuckle's civil tort theory is that the Board retaliated against her because she reported that a Board member had continued to act on matters after allowing the member's license to lapse. The Notice of Findings, deemed to be the SPB final decision because Arbuckle failed to request a hearing, is that no adverse action was taken against her because of this report. "Hence, [she] should be required to set aside the [SPB]'s decision in a writ of mandate proceeding as a prerequisite to filing" a civil tort suit. (Fresno, supra, 188 *388 Cal.App.3d at p. 1489, 234 Cal.Rptr. 136.) The SPB finding "is presumptively valid until shown to be otherwise in the mandate action." (Fair Political Practices Com. v. Californians Against Corruption (2003) 109 Cal.App.4th 269, 282, 134 Cal.Rptr.2d 659.) The SPB decision precludes the instant civil suit, which Arbuckle concedes is based on the same factual claims as her SPB complaint. (Knickerbocker, supra, 199 Cal.App.3d at pp. 242-245, 244 Cal. Rptr. 764.)

DISPOSITION
Let a writ of mandate issue commanding the trial court to vacate its order denying the Board's motion for summary judgment and to enter a new order granting the motion. Arbuckle shall pay the Board's costs of this proceeding. (Cal. Rules of Court, rule 8.276.)
We concur: SCOTLAND, P.J., and NICHOLSON, J.

APPENDIX

Applicable Superseded Regulations

(Cal. Regulatory Code Supp., Register 2002, No. 33 (Aug. 16, 2002) pp. 7-8.2)

56. Whistleblower Retaliation Complaint Process.
Any state employee or applicant for state employment, or any employee or applicant for employment with a California Community College, who believes that he or she has been retaliated against in employment for having reported improper governmental activity, as that phrase is defined in Government Code Section 8547.2(b), or Education Code Section 87162(c), or for having refused to obey an illegal order or directive, as defined in Government Code Section 8547.2(e), or Education Code Section 87162(b), may file a complaint and/or appeal with the Board in accordance with the provisions set forth in Sections 56.1-56.8. For purposes of complaints filed by community college employees or applicants for community college employment, the local community college district shall be deemed the "appointing power."

56.1. Requirements for Filing Whistleblower Retaliation Complaint with the Appeals Division of the Board.
An individual desiring to file a complaint of retaliation with the Board must adhere to the following requirements:
(a) Prior to filing his or her complaint with the Board, the complainant shall comply with all other filing requirements, if applicable, set forth in Government Code Section 19683.
(b) The complaint shall be filed with the Appeals Division within one year of the most recent alleged act of reprisal.
(c) All complaints shall be in writing.
(d) Each complaint shall:
(1) identify the facts that form the basis of the complaint, including, but not limited to: the improper governmental activity that the complainant reported, or the illegal order or directive the complainant refused to obey; the date the complainant reported the improper governmental activity, or refused to obey the illegal order or directive; the person(s) to whom the complainant reported the improper governmental activity, or to whom the complainant stated that he or she would not obey the illegal order or directive; the improper personnel action, as defined in Government Code Section 8547.3(b), or Education Code Section 87163(b), the complainant experienced as a result of reporting the improper governmental activity, or refusing to obey an illegal order or directive; the date on *389 which the improper employment action occurred; and all information that the complainant possesses that shows that the improper employment action occurred as a result of complainant's report of improper governmental activity, or refusal to obey the illegal order or directive;
(A) For purposes of this section, "improper personnel action" includes, but is not limited to, promising to confer, or conferring, any benefit; effecting, or threatening to effect, any reprisal; or taking, or directing others to take, or recommending, processing, or approving, any personnel action, including, but not limited to, appointment, promotion, transfer, assignment, performance evaluation, suspension, or other disciplinary action; as well as intimidating, threatening, coercing, commanding, or attempting to intimidate, threaten, coerce, or command the complainant, for the purpose of interfering with the complainant's rights conferred pursuant to applicable statutes.
(2) include as attachments all non-privileged documents, records, declarations and other information in the complainant's possession, custody, or control that are relevant to the complaint of retaliation;
(3) include as an attachment a list of all documents or records relevant to the complaint of retaliation that are not in the complaining party's possession, custody, or control, but which he or she reasonably believes to be in the possession, custody, or control of the appointing power or any individually named respondent to the complaint;
(4) identify all respondents known to the complainant (i.e., the appointing power as well as all state civil service or community college employees alleged to have retaliated against the complainant), and identify the business address of each respondent named as a party to the complaint;
(5) have attached any complaints of retaliation previously filed with the appointing power concerning the same retaliatory acts alleged in the complaint filed with the Board, and a copy of the written response of the appointing power to the complaint, if such response has been provided to the complainant. If the appointing power provides a written response to any such previously filed complaint of retaliation to the complainant after the complaint has been filed with the Appeals Division, the complainant shall file a copy of any response with the Appeals Division within 5 days of receipt of the written response;
(6) specify the relief and/or remedies sought, including any compensatory damages sought;
(7) If adverse action is sought against any individually named respondent, pursuant to the provisions of Government Code Section 19574, the complaint must clearly state the facts constituting the cause or causes for adverse action in such detail as is reasonably necessary to enable the accused employee to prepare a defense thereto. If the material facts alleged are not within the personal knowledge of the complainant, the complaining party may be required to present supporting affidavits from persons having actual knowledge of the facts before acting upon the request for adverse action. Any failure to comply with the provisions of this section shall constitute a waiver on the part of the complainant to subsequently seek disciplinary action against any individually named respondent;
(8) include a sworn statement, under penalty of perjury, that the contents of the written complaint are true, or believed by the complainant to be true; and
*390 (9) be limited to a maximum of 15 pages of double-spaced typed or printed text, not including exhibits. Additional pages may be allowed upon a showing of good cause. The complainant shall submit a separate document with the complaint stating the reasons for good cause.
(e) The above procedures do not apply in those cases where an appellant raises retaliation as an affirmative defense when appealing a notice of adverse action, pursuant to Government Code Section 19575, when appealing a notice of rejection during probation, pursuant to Government Code Section 19175, when appealing a notice of medical action, pursuant to Government Code Section 19253.5, or when appealing a notice of non-punitive action, pursuant to Government Code Section 19585.

56.2. Acceptance of Whistleblower Complaint; Notice; Findings of the Executive Officer.
(a) Within 10 working days of receipt of the complaint, the Appeals Division shall initiate an investigation to determine if the Board has jurisdiction over the complaint and to determine if the complainant meets the filing requirements set forth in Section 56.1. The Appeals Division shall also determine if the complainant has complied with all other requirements for filing a retaliation complaint, as set forth in Government Code Sections 8547-8547.12 and 19683 and/or Education Code Sections 87160-87164; and Section 56.1 of these regulations.
(b) If the Appeals Division determines that all filing requirements have not been satisfied, it shall notify the complaining party in writing that the complaint has not been accepted and the reason(s) for that determination. The complaining party shall be permitted to file an amended complaint within 15 working days of receipt of the notice of non-acceptance of the complaint.
(c) Within 10 working days of receipt of the amended complaint, the Appeals Division shall initiate an investigation to determine if the Board has jurisdiction over the amended complaint, and to determine if the amended complaint meets the filing requirements set forth in Section 56.1. For purposes of determining the one year limitation period, the date that the original complaint is filed with the Board shall be deemed the filing date for the amended complaint. If the Appeals Division determines that all filing requirements have not been satisfied, it shall notify the complaining party in writing that the amended complaint has been rejected and the reasons) for that determination.
(d) If the Appeals Division accepts the complaint, it shall notify the complaining party in writing that the complaint has been accepted, and shall serve a copy of the complaint or amended complaint on all respondents named in the complaint. Service of the complaint or amended complaint on the appointing power may be accomplished by mailing a copy of the complaint or amended complaint, with a proof of service attached, to the business address of the executive in charge of the Department, Agency, District or Board, and/or to the Legal Office of the appointing power. Service of the complaint or amended complaint on the individually named respondents may be accomplished by mailing a copy of the complaint or amended complaint, with a proof of service attached, to the business address of each individually named respondent.
(e) Within 20 working days after service of notice of acceptance of the complaint, each named respondent shall file with the Appeals Division and serve on all named parties a written response to the complaint. The written response shall include *391 specific and detailed factual information that refutes the complainant's allegations, and shall include all non-privileged documents, records, declarations and other information in the respondent's possession, custody, or control that are relevant to the complaint of retaliation. Each written response shall have attached a Proof of Service. Service of the response may be accomplished by mailing a copy of the reply to both the Appeals Division and the home or business address of the complaining party. Each written response shall be limited to no more than 15 pages of double-spaced typed or printed text, not including exhibits. Additional pages may be allowed upon a showing of good cause. The respondent shall submit a separate document with the response stating the reasons for good cause. The Appeals Division may grant an extension of time in which to file a written response to the complaint upon a showing of good cause by the requesting party.
(f) If the complainant desires to file a written reply to the written response(s), he or she shall file the reply with the Appeals Division and serve a copy of the reply on all named parties to the complaint within 10 working days after service of the response(s) of the named respondent(s). Service of the reply may be accomplished by mailing a copy of the reply to the Appeals Division and the business address of each named respondent, with proof of service attached. Each written reply shall be limited to no more than 10 pages of double-spaced typed or printed text, not including exhibits. Additional pages may be allowed upon a showing of good cause. The complainant shall submit a separate document with the reply stating the reasons for good cause. The Appeals Division may grant an extension of time in which to file a written reply to any response received concerning the complaint upon a showing of good cause. The Appeals Division may, in its sole discretion, condition the granting of any such request for an extension of time upon the complainant's agreement to extend the 60 working day requirement for the issuance of a Notice of Findings for a period of time commensurate with the extension of time granted to the complainant to submit his or her written reply.
(g) Upon acceptance of any written responses, the Appeals Division shall continue its investigation, with or without a hearing, pursuant to Government Code Sections 8547-8547.12 and 19683. In conducting the investigation, the Appeals Division may require any party to the complaint to submit whatever other information it deems necessary to investigate the complaint. For purposes of this section, the phrase "party to the complaint" is limited to the complaining party and/or any respondent named in the complaint.
(h) [Governing assertions of privilege.]
(i) Within 60 working days of service of the Board's notice of acceptance of the complaint, the Executive Officer shall issue and serve on complainant and each named respondent a Notice of Findings concerning the complaint of retaliation, unless the 60 working day period has been waived or tolled under subsection (f) or (h) of this section.
(j) In those cases where the Executive Officer concludes that the complainant failed to prove the allegations of retaliation by a preponderance of the evidence, the Notice of Findings shall, except in those instances where the findings address jurisdictional and/or procedural matters, specifically address each allegation contained within the complaint.
*392 (k) In those cases where the Executive Officer concludes that the complainant proved one or more of the allegations of retaliation by a preponderance of the evidence, the Notice of Findings shall identify the allegations deemed substantiated, and the named respondents deemed to have engaged in retaliatory acts toward the complainant. The Notice of Findings shall also, except in those instances where the findings address jurisdictional and/or procedural matters, specifically refer to the information offered both in support of, and in opposition to, each allegation contained within the complaint. If it is determined that any individual manager, supervisor, or other state civil service employee engaged in improper retaliatory acts, the Notice of Findings and the appropriate disciplinary action to be taken against any individual found to have engaged in retaliatory conduct.
(l) In those cases where the Executive Officer concludes that material questions of fact exist concerning whether the complainant established retaliation for having engaged in whistle blowing activities, the Executive Officer may, in his or her sole discretion, assign the case to an evidentiary hearing before a Board Administrative Law Judge.
(m) The Notice of Findings shall inform each named party of his or her respective right to file a Petition for Hearing Before the Board, pursuant to the provisions of Section 56.3 and/or .56.4. However, in those cases where the Executive Officer issues a Notice of Findings assigning the matter to an evidentiary hearing pursuant to the provisions of subdivision (I), no party to the complaint shall be entitled to file either a Petition for Hearing before the Board, nor a Petition for Order of Remedies.

56.3. Petition for Hearing by Complainant Before the Board.
(a) If the Notice of Findings concludes no retaliation occurred, the complainant may file a Petition for Hearing before the Board.
(b) A Petition for Hearing under this section must be filed with the Executive Officer and served on each named respondents) to the complaint within 30 days of service of the Notice of Findings. The Petition for Hearing must include a copy of the Notice of Findings. Service may be accomplished by mailing a copy of the Petition for Hearing, with a proof of service attached, to the business address of each named party to the complaint.
(c) Each Petition for Hearing shall be in writing and identify the facts that form the basis for the request, but shall be limited to those allegations, issues, defenses, or requests for relief raised in the written pleadings filed during the Notice of Findings process. Any allegation, issue, defense, or request for relief not raised in the written pleadings during the Notice of Findings process shall be deemed waived, except upon petition and determination by the Board of good cause.
(d) Each respondent named in the complaint shall be permitted an opportunity to submit a written opposition to the Petition for Hearing. Any written opposition to the Petition for Hearing shall be filed with the Board and served on the complainant no later than 20 days after the date the Petition for Hearing was served on the respondent.
(e) In reviewing any such Petition for Hearing, the Board shall determine whether the Notice of Findings conforms to the requirements of Section 56.3(c), and whether the Notice of Findings is supported by substantial evidence.
*393 (f) If the Petition for Hearing is denied, the Board shall issue a Decision that adopts the findings of the Executive Officer as its own decision in the matter.
(g) If the Petition for Hearing is granted by the Board, the Board shall issue a resolution rejecting the findings of the Executive Officer and assign the matter to an administrative law judge, who shall conduct an evidentiary hearing in accordance with those statutes and regulations governing the conduct of Board evidentiary hearings, and issue a Proposed Decision for the Board's review and consideration.
(h) The evidentiary hearing shall be based solely on those allegations, issues, defenses, and requests for relief raised by the parties in the written pleadings during the Notice of Findings process, except in those cases where the Board has determined, pursuant to subdivision (c) of this section, that good cause exists to permit the moving party to amend the pleadings. Any document submitted by any party as an attachment or exhibit to the written pleadings during the Notice of Findings process shall not be considered by the administrative law judge during the evidentiary hearing, unless each document is first introduced and deemed to be relevant and admissible evidence by the administrative law judge during the course of the evidentiary hearing. Each named respondent shall have the right to be represented by a legal representative of his or her own choosing during the hearing, and to present a defense to the allegations contained in the complaint, separate and apart from the defense presented by any other named respondent.
(i) The Board may, in its sole discretion, adopt, reject, or modify the Proposed Decision. If the Board rejects the Proposed Decision, the parties shall be afforded an opportunity to present written and/or oral argument to the Board at a date, time and location designated by the Board, after which time the Board shall issue its own decision concerning the matter.

56.4. Petition for Hearing by Respondents Before the Board.
[Similar to section 56.3.]

56.5. Decision Adopting the Notice of Findings.
If no Petition for Hearing is received pursuant to the provisions of Section 56.3 or 56.4, the Notice of Findings shall be deemed to be the Board's final Decision in the matter, and no named party to the action shall be deemed to have any right of further appeal to the Board.